### RIDGEWAY STOVE COMPANY *vs.* JOHN M. WAY.

Suffolk. March 2. — May 7, 1886. W. ALLEN & HOLMES, JJ., absent.

A portable furnace was put into a house, under an agreement that it should remain the property of the seller until paid for. It rested by its own weight upon a circle of bricks set on the cellar floor, and was connected by pipes with stationary pipes placed in the house when it was built. The house also had holes in its chimneys from the different rooms, so that stoves could be used to heat the house. After the furnace was put in, and before it was paid for, the land on which the house stood was conveyed to a person who did not know about the agreement in regard to the furnace, and who did not know whether there was a furnace in the house or not. In an action of tort, by the seller of the furnace against the purchaser of the house, for the conversion of the furnace, the judge excluded evidence of the secret intention of the plaintiff and of the former owner of the house, in regard to whether the furnace was to become part of the realty; and found, as a fact, that the furnace was annexed to and became part of the realty, and passed to the defendant by his deed. The judge also found, as a fact, that the defendant was a *bona fide* purchaser for value, and ruled that he was not put upon inquiry as to the agreement made when the furnace was put into the house. *Held,* that the plaintiff had no ground of exception.

TORT for the conversion of two portable furnaces, with pipes, registers, register borders, and register boxes. Answer, a general denial. Trial in the Superior Court, without a jury, before *Knowlton,* J., who allowed a bill of exceptions, in substance as follows :

It appeared in evidence that one William Coady was the mortgagor in possession of certain real estate in Boston, consisting of two dwelling-houses with the land under and adjoining them; that Coady in July, 1884, agreed with the agents of the plaintiff that the plaintiff should place in each of these houses a portable furnace, with the pipes and registers connected therewith; that said furnaces, pipes, and registers should remain the property of the plaintiff; that Coady should pay $100 in cash when the furnaces should be placed in the houses, and thereafter should pay a rental of $35 a month for said furnaces until the rentals, together with the $100, should amount to $240, when all title to the furnaces in the plaintiff should cease; and that this lease of the furnaces should be put in writing and signed by Coady, which was done on September 8, 1884.

Coady explained to the agents of the plaintiff that the houses would rent for $30 a month each, and that, with the money thus

received, he would be able to pay for the furnaces before the interest on his mortgage and his taxes would have to be paid.

The houses had just been built by Coady, and were then ready for occupation. In pursuance of the above agreement, the agents of the plaintiff took two furnaces from their stock and set them up in the cellars of the houses.

The manner of setting up the furnaces was as follows : four bricks were set on end on the floor of the cellar, the base rim of the furnace was placed upon these bricks, other bricks were set on end in a circle under the rim, with mortar between the bricks, but with no mortar between the upper surface of the bricks and the rim; and then the other parts of the furnace were placed upon the rim. The rim resting on the circle of bricks made a joint as tight as was necessary. An open space was left in the circle of bricks to allow the air from the cellar, or from outdoors by means of a cold-air box, to pass up through the furnace. At the time of the alleged conversion, a cold-air box had been connected with one of the furnaces, but the other had none. There were holes in the top of the casing of the furnace, and collars were placed in these holes. The hot-air pipes fitted over these collars, resting on the top of the furnace, and were supported at the farther end by wires passing under the pipes and fastened to the ceiling of the cellar. The hot-air pipes were slipped into stationary pipes, which had been placed in the houses by Coady when they were built, leading from the ceiling of the cellar upward, through and between the partitions, to the rooms of the house. The smoke-pipe passed into the chimney. Each soapstone register border was placed in a hole in the floor, resting on a ledge of wood. The registers were set in the several rooms, and each register and register box rested on the soapstone border, and connected with the stationary pipes. Neither furnaces, pipes, boxes, borders, nor registers were in any other manner attached to the houses or the land. There were holes into the chimney from the rooms of the houses, so that stoves could be used to heat the houses.

On November 26, 1884, the defendant received from Coady a warranty deed of the real estate. There was evidence that it was given as part of an arrangement by Coady to obtain money to effect a compromise with his creditors, and there was no

evidence to control the recital of a valuable consideration contained in it. Nothing was said in the deed about the furnaces. In December, the plaintiff demanded the furnaces of the defendant, who refused to allow the plaintiff to remove them, and claimed them under his deed from Coady. The plaintiff never has received any money in payment for the furnaces or for the use of them, but received an order for $100, drawn by Coady on John S. Lamphrey and accepted, which it receipted for as a payment of that sum, but which it has not collected.

The defendant testified that he went into one of the houses and through some of the upstairs rooms before he took his deed, and saw some of the registers, but that he never saw the furnaces until after this action was brought. There was no evidence offered tending to show that he knew of the existence of the furnaces when he took his deed, except what appears herein. There was no other evidence that he ever made any inquiries about the furnaces from Coady or any one else.

The plaintiff offered the testimony of its agent, Rowe, who made the arrangements with Coady and who placed the furnaces in the houses, as to whether the plaintiff, when it placed the furnaces in the houses, intended that they should become a part of the houses; and also the testimony of Coady as to whether he intended, when the furnaces were placed in the houses, that they should become a part of the houses. The judge excluded this evidence; and ruled that the secret intention of Coady and of the plaintiff, not manifested by their acts or words, could not be put in evidence to affect the defendant; but admitted evidence of their acts and agreements.

The judge found, as a fact, that the property claimed in the plaintiff's writ was annexed to and became a part of the realty, and passed to the defendant by his deed; that Coady built his houses with a view to their being heated by furnaces similar to these, and that these furnaces were of a kind ordinarily designed to be kept and used, as long as they are of any value, to heat the houses in which they are originally set up; and that both Coady and the plaintiff intended that the furnaces should become a part of the realty, but that they both further intended that the furnaces should not become a part of the realty until they should be paid for; and ruled that this second intention

on their part could have no effect upon the rights of the defendant.

The judge declined to rule that, upon all the evidence, the defendant was not a *bona fide* purchaser for value; and found as a fact that he was, and that he had no knowledge or information of any agreement or understanding affecting the rights of an owner of the realty; and also declined to rule that, if the defendant was a purchaser for value, he was put upon his inquiry as to whether the furnaces were a part of the realty or not, and, having neglected to make any inquiries, that he was affected with notice of what he would have found upon inquiry, to wit, that these furnaces were the property of the plaintiff; and found for the defendant. The plaintiff alleged exceptions.

*P. Keyes*, for the plaintiff, cited, among other cases, *Towne* v. *Fiske*, 127 Mass. 125; and *Allen* v. *Mooney*, 130 Mass. 155.

*E. M. Bigelow*, for the defendant.

MORTON, C. J. It is quite clear that the Superior Court was justified in finding that the property claimed in the plaintiff's writ was annexed to and became a part of the realty, and passed to the defendant by his deed. The property claimed consisted of two portable furnaces, with the pipes and registers attached to them. They were put in as a part of the houses, were essential to the enjoyment and use of them as dwelling-houses, and were intended by the owner to be a part of the realty as soon as they were paid for. The facts that there was an agreement between the owner and the plaintiff that the furnaces should remain the property of the plaintiff until they were paid for, and that both so intended, are immaterial, unless the defendant had notice of such agreement and intentions. Notwithstanding such an agreement, the property annexed to the realty will pass to an innocent purchaser without notice. *Southbridge Savings Bank* v. *Exeter Machine Works*, 127 Mass. 542, and cases cited.

As the Superior Court found, in the case at bar, that the defendant was a *bona fide* purchaser of the houses without notice of the agreement of the plaintiff, it follows that his rights are not affected by such agreement, and that the property in suit passed by the deed to him. The facts that the defendant did not see the furnaces before he bought, and that he did not make any inquiries about them, are immaterial. He bought the houses

as they were, and there was nothing to excite his suspicions, or to put him upon inquiry. The court could not properly rule, as requested by the plaintiff, that, as the defendant made no inquiries, "he was affected with notice of what he would have found upon inquiry, to wit, that these furnaces were the property of the plaintiff." *Exceptions overruled.*