[No. 1403. Decided December 6, 1894.]

F. M. WADE ET AL., *Respondents*, v. DONAU BREWING COMPANY ET AL., *Respondents*, WEISEL & VILTER MANUFACTURING COMPANY and GOETZ & BRADA MANUFACTURING COMPANY, *Appellants*.

FIXTURES—RIGHTS OF SUBSEQUENT MORTGAGEE—WHEN MORTGAGE TAKES EFFECT.

Where a building has been built for brewery purposes, and to further such object there has been built into it, as an essential part, a direct expansion refrigerating plant, such machinery becomes a part of the realty as to mortgagees of the premises, although the contract of sale between vendor and purchaser of the machinery treats it as personal property.

The fact that bonds were executed as of a certain date, and a mortgage to secure their payment given to a trustee for the bondholders, will not give a legal existence to the mortgage until the date of the sale and delivery of the bonds.

*Appeal from Superior Court, Pierce County.*

*Eric E. Rosling* and *F. A. Huffer,* for appellants.

*Sharpstein & Blattner, Crowley, Sullivan & Grosscup* and *Ashton & Chapman,* for respondents.

On the point that machinery attached to realty becomes a part thereof, counsel cite *Roddy v. Brick,* 42 N. J. Eq. 218 (6 Atl. 806); *Dudley v. Hurst,* 67 Md. 44 (8 Atl. 901); *Ridgeway Stove Co. v. Way,* 141 Mass. 557 (6 N. E. 714); *Powers v. Dennison,* 30 Vt. 752; *Knowlton v. Johnson,* 37 Mich. 47; *Doughty v. Owen,* 19 Atl. 540; *Equitable Trust Co. v. Christ,* 47 Fed. 756; *Hopewell Mills v. Taunton Savings Bank,* 150 Mass. 519.

A mortgage, like a deed, takes effect only from the date of its delivery, and it cannot be deemed to have an existence until a debt has been created, so, until the bonds were delivered to the bondholders, the mortgage had nothing on which to act, since there can be no security for a non-existing debt. *Curtis v. Leavitt,* 15 N. Y. 9, 194; *Lord v. Yonkers Fuel Gas Co.,* 99 N. Y. 547, 556; *Coddington v. Gilbert,* 17 N. Y. 489; *Brownell v. Town of Greenwich,* 114 N. Y. 518 (22 N. E. 24).

A mortgage of realty attaches to all fixtures which have become a part of the realty, even as against a conditional vendor. *Southbridge Savings Bank v. Exeter Machine Works,* 127 Mass. 542; *Southbridge Savings Bank v. Stevens Tool Co.,* 130 Mass. 547; *Davenport v. Shants,* 43 Vt. 546; *Ridgeway Stove Co. v. Way,* 141 Mass. 557 (6 N. E. 714.)

The opinion of the court was delivered by

DUNBAR, C. J.—The undisputed facts in this case are as follows: On the 16th day of July, 1889, one Simon Donau and James H. Barry, for the purpose of supplying a certain brewery about to be constructed on the premises in controversy with appliances to be used in the manufacture of beer, entered into the following contract with appellant, the Weisel & Vilter Mfg. Co.:

"This agreement made and entered into this sixteenth day of July, 1889, by and between the Weisel & Vilter Manufacturing Company of the city of Milwaukee and State of Wisconsin of the first part and Simon Donau and James

H. Barry, of Tacoma, Washington, Ty., of the second part, witnesseth:

"That said party of the first part has agreed to furnish deliver and erect on the premises of said parties of the sec ond part at Tacoma, Washington Ter., of the best materiai and workmanship and in complete working order and condition:

"One direct expansion Refrigerating Plant described as follows: One 35 ton Refrigerating Machine of compressor size 11″ bore 22″ stroke. One Corliss Engine 17 x 42″; with Bandwheel 12 ft. dia. 19″ face turned crowning to receive the belt which transmits power to said second parties' lineshaft. One iron Gauge Front with 2 8 inch Ammonia Gauges and one 8 inch Steam Gauge. One Oil Separator and Receiver connected with Oil Drum, Glass Gauges, Lever Cocks, Valves and Trimmings erected on cast iron brackets bolted to wall. One submerged Condensor with Tank 12′ 9″ - 7′ 6″ - 7′, containing 2800 ft. of 1″ extra strong pipe made in coils of one continuous length, without joints except at each end where they connect to manifolds. Manifolds made of 3½″ double extra strong pipe, with extra strong nipples and steel couplings. One Ammonia Storage Tank with Valves and Trimmings. All the necessary 2″ evaporating pipes with double slotted dises to cool 152,000 cubic feet of Cellar space from 0 to 3 Reaumer, in the following rooms: 1 Fermenting Rooms 42-78-15′; 1 Fermenting Rooms 42-78-15′ less 1 ft. 1 Chip Cask Cellar 42-78-114′; 1 Racking Room 20-50-9′. One direct expansion Ammonia Beer Cooler of iron copper covered pipes of 20 ft. length, 14 pipes high, which is to be placed below second parties' Bandelot Cooler. Thirty-six Attemperators of 1″ iron pipe with valves and swing joint at each end. The said first party to make the connections from Attemperators to Sweet Water Tank which is to be furnished by said second parties. One Ammonia Coil with feed and suction valve. All the Ammonia connections to above Coil. Also, First Charge of Ammonia and thirty days run of the whole plant by one erecting engineer. All labor and material necessary to erect the plant on said second parties' foundations. The party of the first part agrees to hold the said second parties harmless in any infringement suit, which may arise from the use of its machinery. The said parties of the second part agree to provide a suitable room for the erection of the foregoing machinery; to do the mason and carpenter work, steam, water and pipe connections, and to furnish the

necessary light, oil, steam and water. It is further agreed that the parties of the second part shall, on receipt of the above machinery, cause the same to be insured against fire in good and responsible fire insurance companies, and keep the same insured until the fulfillment of this agreement, for the full amount of its value, and have the policies of insurance assigned and delivered to the party of the first part. The party of the first part agrees to have the machinery hereinbefore mentioned in operation and good working order on or before November fifteenth, 1889, provided no unnecessary delay is caused by unavoidable accidents or strikes or by the railroad carrying the machinery, and providing the party of the first has free and unrestrained access to the rooms and cellars wherein the machinery is to be erected which is hereby agreed to by said party of the second part.

"In consideration of the foregoing conditions the parties of the second part agree to well and truly pay or cause to be paid to said parties of the first part, the just and full sum of sixteen thousand dollars ($16,000) as follows : Two thousand dollars when said second parties are notified by said first party that the machinery is ready to be shipped. Three thousand dollars on completion of machinery, less amounts paid out by said second parties for freight, labor and material, for the balance of eleven thousand dollars said second parties are to give one promissory note payable at the Second Ward Savings Bank at Milwaukee, Wis., within six months from date of completion with interest at the rate of six per cent. per annum and with exchange indorsed by responsible parties acceptable to said first party. It is further agreed that the title, ownership and right of possession of the aforesaid machinery shall be and remain in the party of the first part until the whole amount above provided of money and notes is fully paid, as above agreed, when the same shall vest in the parties of the second part. And it is further agreed, that if the said party of the first part, in case of default of the parties of the second part to make the payments aforesaid, at the times and in the manner hereinbefore provided, shall take and resume the possession of the aforesaid machinery, it shall be the duty of such first party to sell the same in such manner as, in its opinion, may be best for the interests of the parties hereto ; and out of the proceeds of such sale to pay the balance of money or notes due, or to become due, on this contract, together with the expenses of retaking said property and of said sale, and the balance to be paid to the parties of the second part hereto.

"This agreement to bind the heirs, executors, administrators and assigns of both contracting parties.

"In witness whereof the parties hereto have set their hands: and seals the day and year first above written.

THE WEISEL & VILTER MFG. COMPANY,.
per ALBERT WALLBER, Vice Prest.

In presence of
(Sgd) FRED EGELHOFF                                    (Seal)·

(Sgd) SIMON DONAU,      (Seal)
(Sgd) A. C. MACREADY.    (Sgd) JAMES H. BARRY, (Seal)

"When this contract is assigned to the corporation about to· be organized, it is hereby understood that we will accept the signature of said corporation made by its proper officers on the note of eleven thousand dollars and the endorsement on same of Simon Donau and James H. Barry.

(Sgd)   THE WEISEL & VILTER MFG. CO.
per ALBERT WALLBER, Vice Prest.
(Seal)."

This contract was thereafter assumed by the defendant Donau Brewing Company, by whom the cash payments provided for therein were duly made. On May 25, 1890, in pursuance to the contract, the defendant Donau Brewing Company, executed and delivered to appellant its note for $11,000, payable six months after date, which note is still wholly unpaid. On the 20th day of March, 1890, the said Donau Brewing Company executed one hundred and twenty bonds, numbered from 1 to 120, both inclusive, each of the denomination of $500, dated March 20, 1890, and payable to the order of S. Donau; and at the same time, to secure the payment of such bonds, executed and delivered to the respondent F. M. Wade, president of the National Bank of Commerce, as trustee for the bond-holders, its mortgage on the brewery premises. Upon the maturity of the mortgage, the respondent brought suit to foreclose the same, in which action the appellant Weisel & Vilter Mfg. Co., was joined as party defendant, because it claimed ownership of the machinery described in the agreement above set forth, and the appellant Goetz & Brada Mfg. Co. because it claimed a lien on the property. The decree of the court was adverse to the claim of the appellants, and they have brought the case here on appeal.

The first contention of the appellants is that the agree-

ment constitutes a conditional sale instead of a chattel mortgage. With the view we take of the other propositions in the case it will not be necessary to pass upon that question, for we are of the opinion that the machinery furnished by the appellant was substantially attached to the realty on which the mortgage was given, and that it became a fixture thereto and lost its chattel characteristic. It seems to us that this question was decided by this court in *Cherry v. Arthur*, 5 Wash. 787 (32 Pac. 744). There we said:

"In ascertaining whether such a machine does become part of the realty in favor of mortgagees, the rule is, that the manner, purpose and effect of annexation to the freehold must be regarded. If a building be erected for a definite purpose, or to enhance its value for occupation, whatever is built into it to further those objects, becomes a part of it, even though there be no permanent fastenings such as would cause permanent injury if removed. But mere furniture, although some fastening be necessary to its advantageous use, is removable."

It is true in that case that the machine in question, which was a planer used in a sawmill, was held by the court not to be a fixture because it was held peculiarly subject to be used in one place as well as another; and it is a notorious fact that planers are so used and are for all practical purposes portable. But the machinery in controversy in this case is not of that character. It is described in whole as " one direct expansion refrigerating plant," and the different parts of the machinery which go to make up this plant are dependent more or less one upon the other, and were furnished to supply the building, which was erected for a definite purpose, and the purpose of this machinery was definite and adapted to the particular building into which it was placed.

Many of these pieces of machinery are of such character that the court has not sufficient technical knowledge to determine their exact use and relation to the other parts of the machinery, or to the building itself. But the testimony, which we have examined with some care, convinces us that they fall within the rule announced above. The testimony

of the president of the brewing company, in answer to this question :

"Now, in making the plans for that building, Mr. Donau, did you have in view the placing of brewery machinery in it and appliances?" was "that belongs all to one plan."

Question. "Now you may state just how the building was made with reference to any machinery that was placed in it?"

Answer. "The building was built so that everything went to its place. The machinery is placed where it belongs according to the plans."

Q. "Was the plan made before the machinery was ordered?"

A. "Certainly ; it must be."

Q. "And were the openings and places where the machinery was to go made before the machinery was received?"

A. "Yes, sir."

It seems to us that this testimony, which is undisputed, without any question at all brings the case squarely within the rule announced in *Cherry v. Arthur, supra.* We are perfectly aware that there is a wilderness of authority on this vexed question of when machinery loses its character of chattelism and becomes a fixture to real estate, and thereby a part of the realty ; and that there is a lamentable conflict also in the authorities. But we are satisfied to abide by the rule which we have prescribed above, and which was the rule announced in *McConnell v. Blood,* 123 Mass. 47 (25 Am. Rep. 12), and it has been uniformly followed by the Massachusetts courts since that time, and we think by a majority of other courts; so that it would be profitless to undertake to review or harmonize the many authorities which are cited, or which could be cited, on that question.

Concluding, then, that the machinery in question became a part of the realty, we are satisfied that the testimony shows that the same was placed in the building before the execution of the mortgage to respondent, although we do not now pass upon the question of what effect the mortgage would

have on the machinery, if it were conceded that it was placed there after the mortgage was executed.

When we say that the machinery was placed there before the mortgage was executed, we mean to say, before the mortgage went into legal effect or before it had a legal existence. There is some conflict in the testimony as to just when the last of the machinery was placed in the building. The major part of it had evidently been placed there prior to the execution of the mortgage, on the 20th day of March, 1890. Some small portion, however, we are satisfied was placed afterwards. But it plainly appears that it was all in place prior to the date of the pledging of the first bonds. And although the respondent Wade was named as trustee of the bond-holders, he was appointed by the mortgagor, and there being no bond-holders in existence prior to the date that the bonds were purchased, there could be no trustee. Consequently, until the bonds were delivered to the bond-holders, the mortgage had no real existence, having nothing on which to act, there being no debt in existence for it to secure.

The mortgage, then, in reality cannot be considered executed until after the bonds were sold. This being true, and the testimony showing that at that time the machinery had been placed in the building, and the machinery being of a nature which by reason of its being placed there became a part of the realty, the judgment of the lower court was correct, and will therefore be affirmed.

This also disposes of the claim of appellant, Goetz & Brada Manufacturing Company as the judgment is affirmed as to them also.

HOYT, STILES and SCOTT, JJ., concur.