[No. 15718. *En Banc.* July 12, 1920.]

D. H. KING, *Plaintiff,* v. J. M. BLICKFELDT et al., *Defendants,* TITLE TRUST COMPANY et al., *Appellants,* OTIS ELEVATOR COMPANY, *Respondent.*[1]

FIXTURES (8, 9)—AS SUBJECT OF MECHANICS' LIENS—VENDOR AND VENDEE—MORTGAGEES AND SUBSEQUENT LIENORS. An elevator installed in an apartment building under a conditional sales contract with the owner of the premises reserving title to the elevator in the elevator company until fully paid for, although personality as between the parties, becomes a fixture, as the parts are attached to the building, as to a mortgagee for future advances and other lienors furnishing labor and material for the building, where the mortgage advances and other lien claims arose contemporaneously with the installation of the elevator without notice of the conditional sales contract, which was not recorded; the circumstances being such as to warrant a belief that the elevator was becoming a part of the building without resort to other protection than the personal liability of the owner and the right to a lien against the building.

[1]Reported in 191 Pac. 748.

SAME. In such a case, the fact that the elevator company, upon completing installation of the elevator, retained possession of the reverse lever controlling its operation, does not show non-delivery of the elevator, preventing passing of the title, since the parts became attached to the realty as fixtures as the same were attached to the building.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 21, 1919, in favor of one defendant, adjudging the priority of a claim of title to property sold under a conditional sales contract, in an action to foreclose mechanics' and materialmen's liens. Modified.

*Jones, Riddell & Brackett* and *Roberts & Skeel,* for appellants.

*Bogle, Merritt & Bogle,* for respondent.

PARKER, J.—This action was commenced in the superior court for King county to foreclose a number of mechanics' and materialmen's liens held by the plaintiff, King. Our present inquiry has to do only with the mortgage lien claim of the defendant and cross-complainant Title Trust Company, and the mechanics' and materialmen's lien claims of the defendants and cross-complainants Inlaid Floor Company and Seattle Marble and Tile Company, as against the claim of title made by the defendant and cross-complainant Otis Elevator Company under a claimed conditional sale of the elevator installed by it in the building in question. A trial in the superior court upon the merits, adjudicating the rights of all these parties as well as others, resulted in a decree sustaining the claim of title made by the Otis Elevator Company to the elevator in question as superior to these mortgage and lien claims. From this disposition of the cause, Title Trust Company, Inlaid Floor Company, and Seattle

Marble and Tile Company have appealed to this court.

On September 20, 1917, Otis Elevator Company entered into a written contract with the Real Property Investment Company, the owner of the real property in question, situated in the city of Seattle, by which it agreed to furnish, erect and install in the building then in course of construction upon the property, a passenger elevator. The contract, which was in the form of a proposal and acceptance, contained, among other stipulations, the following:

"We are to retain title to and possession of all machinery, implements and apparatus furnished by us under terms of this proposal, until final payment shall have been made."

This contract was never filed in the office of the county auditor as a conditional sale contract, nor did any of appellants have any actual knowledge of its existence until after each of their lien claims accrued. This work of erecting and installing the elevator in the building was commenced by the elevator company on December 15, 1917, which work continued until near March 19, 1918, when it had been completed and was approved by the supervising architect. The furnishing and installation of the elevator not being paid for as agreed upon, the elevator company claimed title to the elevator and the right to remove it from the building, freed from the mortgage and lien claims of appellants.

On December 6, 1917, Real Property Investment Company conveyed by deed, absolute in form, the lots and the building thereon then in course of construction to Title Trust Company, which deed was duly recorded in the office of the auditor of King county on the following day. This deed was intended as a mortgage to secure a loan of $20,000 agreed to be made by Title Trust Company to Real Property Investment Com-

pany. This loan was consummated in part only, the Real Property Investment Company receiving from Title Trust Company only the following amounts thereon at the times mentioned: On December 13, 1917, $3,000; on December 30, 1917, $500; on January 2, 1918, $500; on January 17, 1918, $500; on February 2, 1918, $800, and on February 9, 1918, $3,000, in all $8,300, which, together with the interest accruing thereon, was the amount for which the trial court awarded foreclosure in favor of Title Trust Company, but subject to the right of the elevator company to remove the elevator from the building, freed from the claims of Title Trust Company under its mortgage. This period, it will be noticed, was substantially contemporaneous with the period of the erection and installation of the elevator.

On December 20, 1917, the Seattle Marble & Tile Company, in pursuance of a contract made in behalf of the owner of the property with them, commenced to furnish and put in place the marble in the vestibule of the building, which furnishing of material and work continued to, and was completed on or about, February 27, 1918. This period, it will be noticed, was substantially contemporaneous with the erection and installation of the elevator in the building. The superior court decreed foreclosure of the. lien of the Seattle Marble & Tile Company for the unpaid balance due them, subject, however, to the right of the elevator company to remove the elevator as its absolute property.

On February 2, 1918, Inlaid Floor Company, in pursuance of a contract entered into by them with the owner of the building, commenced to furnish material for and lay floors in the building, which furnishing of material and work continued until March 26, 1918.

This period, it will be noticed, was contemporaneous with about the latter half of the period of the erection and installation of the elevator in the building. Foreclosure of the lien of Inlaid Floor Company for the balance due them was awarded by the decree, subject, however, to the right of the elevator company to remove the elevator as its absolute property.

Our principal inquiry being as to whether or not the elevator, upon its installation in the building, became such a fixture as to become a part of the realty as between the elevator company and appellants, there being no agreement between them, nor any agreement between the owner and the elevator company of which they had notice, as to the elevator plant remaining the property of the elevator company, and therefore personal property until paid for, it becomes necessary for us to note the relation of the elevator to the general use of the building, what the elevator plant consisted of, and the manner of its physical attachment to the building and the ground upon which it rests. The building is an apartment house of five stories, all of which the elevator was designed to serve. There was built into the building as a part of its original construction a permanent shaft for the elevator. One could hardly say that the elevator plant was of a special or peculiar type, or that, as to most of its parts, such as the car, cables, counterweights, etc., they were made especially for installation in this particular plant. Indeed, most of its parts, viewed separately, could well be classed as stock parts. However, in its installation there was constructed as a part of the plant a concrete foundation in the basement, on which the engine or motor rested and was firmly fastened; the guideposts running up the sides of the shaft, both for the car and the counterweights, were firmly fastened to the build-

ing; and there were also other parts of the plant physically attached to the building. Indeed, it was installed and attached to the building, generally speaking, in a manner quite familiar to everyone who has occasion to visit such buildings. In all outward appearances it seems to be as much a permanent fixture and a part of the building, and as necessary to the ordinary efficient use of the building, as any other permanently constructed part of the building. One buying the property from the owner, or one taking a mortgage on the property from the owner, or one performing labor and furnishing materials for which he would have a lien upon the property would, we think, without question, assume from all outward appearances, he having no knowledge of any special agreement or understanding existing between the owner and the one who installed the elevator plant, that it was a permanent fixture and a part of the realty to which he could look as part of his security.

If this were a controversy between the owner of the building and appellants, the former claiming the elevator plant to be personal property and not a part of the realty, and the latter claiming the plant to be a fixture and a part of the realty subject to their mortgage and lien claims, we would have little hesitancy in holding the plant and all its parts to be a fixture and subject to appellants' mortgage and lien claims. Whatever seeming conflict there may be in the holdings of the courts touching the question of what are fixtures under the varying circumstances of the numerous cases, we know of no holding which would lend substantial support to the claim of this elevator being other than a fixture and a part of the realty, as between the owner of the building and appellants. The reason-

ing of our own decisions, even those holding that the particular property involved was not a fixture, is all but conclusive in support of this view of the law. *Cherry v. Arthur*, 5 Wash. 787, 32 Pac. 744; *Wade v. Donau Brewing Co.*, 10 Wash. 284, 38 Pac. 1009; *Chase v. Tacoma Box Co.*, 11 Wash. 377, 39 Pac. 639; *Filley v. Christopher*, 39 Wash. 22, 80 Pac. 834. On the other hand, if it were a controversy between the owner of the building and the elevator company as to whether or not the elevator plant is personal property as between them, we would as readily hold it to be personal property, since by their express agreement that title should remain in the elevator company until the purchase price was paid in full, they impliedly agree that, as between them, it should be regarded as personal property until paid for. *Boeringa v. Perry*, 96 Wash. 57, 164 Pac. 773.

We would also hold the elevator plant to be personal property, even as between the elevator company and appellants, if it were shown that the latter had knowledge of the agreement and understanding in that behalf made between the owner and the elevator company. *Allis-Chalmers Mfg. Co. v. Ellensburg*, 108 Wash. 533, 185 Pac. 811. These considerations, while falling short of solving our present problem, nevertheless furnish us a starting point, since we are to determine whether or not appellants are in as favorable a position, as against the claim of the elevator company, as subsequent purchasers or incumbrancers for value and without notice of the claim of the elevator company.

Generally speaking, we think it may safely be said that an agreement between the owner of realty and the owner of the personal property sold by the latter to the former to go into the realty under such conditions

as to its relation to the realty as would under ordinary circumstances clearly make it a fixture and a part of the realty, may be effective to preserve the personal status of the property so sold and prevent it becoming a fixture and a part of the realty, even against prior incumbrancers; providing the material or thing so sold and going into the realty could be removed therefrom without material damage thereto impairing the security of the prior incumbrancer. On the other hand, generally speaking, we think it may safely be said that an agreement between the owner of realty and the owner of the personal property sold by the latter to the former to go into the realty under such conditions as to its relation to the realty as would under ordinary circumstances clearly make it a fixture and a part of the realty, will not preserve the personal status of the material or thing so sold and going into the realty and prevent it becoming a fixture and a part of the realty, as against subsequent incumbrancers who have no notice, until after the accrual of their claims, of the agreement by which the owner of the realty and the owner of the personal property assumed to preserve the personal status of the latter and prevent it becoming a fixture and a part of the realty. These considerations do not quite solve our present problem; but they constitute, we think, another step in that direction, since we have seen that the advancing of the $8,300 by appellant Title Trust Company to the Real Property Investment Company, secured by the mortgage in pursuance of the loan agreement between them, and the furnishing of work and material by the other appellants upon which their lien claims rest, were all substantially contemporaneous with the construction and installation of the elevator plant by the elevator company. So the question still remains: Are the appel-

lants in the position of subsequent incumbrancers for value and without notice of the agreement between the Real Property Investment Company and the elevator company by which they assumed to prevent the elevator plant becoming a fixture and a part of the realty until paid for? No decision has come to our notice dealing with the rights of purchasers or incumbrancers whose rights as such accrued contemporaneously with the fixtures going into and becoming a part of the realty. However, the reasoning of the decisions wherein there has been considered the rights of both prior and subsequent incumbrancers to look to the fixtures as part of the realty, we think will materially aid us in this inquiry.

In *Wade v. Donau Brewing Co.*, 10 Wash. 284, 38 Pac. 1009, there was involved the question of refrigerating machinery becoming a fixture and a part of the realty of a brewing plant, which machinery was placed in the plant at the instance of the owner, under an express agreement that it should remain the property of the manufacturing company placing it there until it was paid for. The controversy was between the plaintiff, Wade, in the foreclosure of his mortgage, and the manufacturing company so furnishing the machinery, he claiming that the machinery had become a fixture as to him, he being ignorant of the agreement between the owner and the manufacturing company, and that he was in effect a subsequent mortgagee. A considerable part of the machinery was placed in the plant after the execution of the mortgage, but apparently all of it was placed there before the bonds which the mortgage was executed to secure were actually issued. It was held that, as to Wade and his rights under his mortgage, he was, in legal effect, a subsequent mortgagee, and that the prior agreement

as to the personal status of the machinery after its installation in the plant did not, as to his mortgage rights, prevent the machinery becoming a fixture, and therefore as much a part of his security as all other portions of the realty. That case, it will be readily noticed, dealt with a situation wherein the dividing line between prior and subsequent incumbrancers was approached almost as closely as the situation we are here considering.

In *German Savings & Loan Society v. Weber*, 16 Wash. 95, 47 Pac. 224, 38 L. R. A. 267, there was involved the question of whether or not windows, doors, sashes, frames and wainscoating, placed in a building with the express understanding between the one furnishing such material and the owner that it should remain the property of the former until paid for, became fixtures and a part of the realty, subject to the lien of a mortgage loan on the realty fully executed prior thereto. It was held that, as between the owner and the one furnishing the material, it did not become fixtures, and that the title thereto remained in the latter until paid for, since they in effect agreed that it should remain personal property. It was also held that the material did not become fixtures, it not being paid for, even as to the mortgagee, the theory of the decision manifestly being that the mortgagee lost none of his security by giving effect to the agreement between the owner and the one furnishing the material, in view of the fact that the material could be removed without injury to the realty, leaving the mortgage security undiminished from what it was when the mortgage was given. The reason of that decision and the review of the authorities therein cited is of material aid here as emphasizing the thought that the most important inquiry in such cases is, Did the incumbrancer,

when he acquired his security, have a right, in the light of his then knowledge of the premises, to rely upon the assumption that the particular part of the building in question was a fixture and a part thereof?

In *Boeringa v. Perry*, 96 Wash. 57, 164 Pac. 773, there was involved a chattel mortgage upon pipes in the ground used for irrigation purposes; the only title of the mortgagor in the land being that of an entryman upon government land. He thereafter lost his right to perfect his entry of the land, it being thereafter filed upon by another entryman. The controversy over the mortgagee's right to the pipes arose upon his attempted foreclosure and removal of the pipes as against the second entryman. It was held that the mortgage could be foreclosed as against the second entryman, in view of the fact that he was not a subsequent purchaser of the land for value, so far as the pipes were concerned, and that they could be removed without material injury to the land.

In *Allis-Chalmers Mfg. Co. v. Ellensburg*, 108 Wash. 533, 185 Pac. 811, a conditional sale contract of material in the form of equipment for an electric power plant for the city, which sale of equipment was made to the contractor, in which it was agreed that the title to the equipment so furnished should remain in the seller until paid for, was recognized as binding upon the city, it having actual notice of the existence of the contract at the time of the installation of the equipment, and the seller was held to have the right to remove the equipment from the plant unless the city should pay therefor as agreed by the contractor, who had abandoned the work.

These decisions come as near touching our present problem as any to be found in our own reports, and they are of aid here only in a general way. We now

notice some decisions from other states, the reasoning of which at least, we think, will throw more light upon our present inquiry. In *Campbell v. Roddy,* 44 N. J. Eq. 244, 14 Atl. 279, 6 Am. St. 889, we have a decision which counsel for respondent elevator company particularly rely upon, and we agree with them that it is one of the leading cases in this country touching the question here presented. The substance of what was there involved and the holding of the court is well stated in the syllabus to the official report of the decision as follows:

"A vendor of an engine, boiler and machinery, knowing that they were to be annexed to real estate, took a chattel mortgage upon them for a part of the price, but failed to register it. The mortgagor of the chattels afterwards annexed them to real estate upon which he had already given a mortgage.—*Held,* that the lien of the chattel mortgagee should be protected, so far as it would not diminish the security which the real estate mortgagee would have had if the annexation had not been made."

Of course, if these appellants are prior incumbrancers in that their rights as such accrued before it can be said that the elevator plant or any part of it became attached to the realty, the holding of that case, as well as some of our own already noticed, would be decisive against them. But the reasoning of that decision, as does some of our own, we think, lend support to the contentions here made in appellants' behalf, in view of the arising of their rights contemporaneous with the installation of the elevator plant. In that decision we read:

"As between a lienor who consents to have the subject-matter of his lien transmuted into a shape by which subsequent purchasers and mortgagees are liable to be subjected to deceptive dealings, there seems to be no equitable ground upon which the lien

should be recognized against an innocent subsequent mortgagee or purchaser for value. The entire spirit of our registry acts is opposed to the notion that, in such a juncture of affairs, the real estate purchaser would not be regarded as a *bona fide* purchaser against whom the chattel mortgage would be void. But, as already observed, the real estate mortgagees, in the present case, held their lien before the attachment to the realty of the mortgaged chattels. It is true that by force of annexation they would become subjected to the lien of the real estate mortgage absolutely, unless the lien of the chattel mortgagee intervenes. Any property belonging to the mortgagor, which he chooses to annex to the mortgaged premises, becomes realty. But it is difficult to perceive any equitable ground upon which the property of another, which the mortgagor annexes to the mortgaged premises, should inure to the benefit of a prior mortgagee of the realty. The real estate mortgagee had no assurance at the time he took his mortgage that there would be any accession to the mortgaged property. He may have believed that there would be such an accession, but he obtained no right, by the terms of his mortgage, to a lien upon anything but the property as it was conditioned at the time of its execution. He could not compel the mortgagor to add anything to it. So long therefore as he is secured the full amount of the indemnity which he took, he has no ground for complaint. There is therefore no inequity towards the prior real estate mortgagee, and there is equity toward the mortgagee of the chattels, in protecting the lien of the latter to its full extent so far as it will not diminish the original security of the former.''

As to the law touching the rights of subsequent purchasers and incumbrancers, in the note to *Lawton Pressed Brick & T. Co. v. Ross-Kellar T. P. B. M. Co.*, 33 Okla. 59, 124 Pac. 43, 49 L. R. A. (N. S.) 396, the editor says:

''With the exception of the decisions alluded to, it seems to have been unanimously held that the rights

of a purchaser of the realty without notice of the claim
of the seller of fixtures are unaffected by the latter's
retention of the title thereto, or reservation of a right
to retake them upon default in payment of the pur-
chase price.''

The decisions which he notes as exceptions, and hold-
ing contrary to what seems to be the almost unanimous
weight of authority, are the case to which the note is
appended, and certain early New York cases. A num-
ber of decisions are cited in support of this statement
of the learned editor, among which are the following:
*Southbridge Savings Bank v. Exeter Machine Works*,
127 Mass. 542, 163 N. E. 33; *Ridgway Stove Co. v.
Way*, 141 Mass. 557, 6 N. E. 714; *Knowlton v. Johnson*,
37 Mich. 47; *Case Mfg. Co. v. Garven*, 45 Ohio 289,
13 N. E. 493.

Now are these appellants in as favorable position
in asserting that, as to them, this elevator plant is a
fixture and a part of the realty subject to the satis-
faction of their mortgage and lien claims, as if they
were subsequent purchasers or incumbrancers in the
sense that their mortgage and lien claims were wholly
subsequent in time of their inception to the actual com-
pletion of the elevator plant and all of it becoming a
part of the building as a fixture? We think that the
reason of the law calls for a holding that they are.
This elevator plant did not become attached to and a
permanent part of the building at any one instant of
time, but it became attached by progressive stages
while the advancements were being made upon the
mortgage and work done and material furnished and
placed in the building by appellants at substantially
the same rate of progress. While appellants were ad-
vancing money upon the mortgage and were perform-
ing labor and furnishing material in the construction
of the building, they saw the elevator plant steadily

becoming a part of the building, we think, under such circumstances and conditions as to warrant each of them assuming that the elevator plant and its several parts was becoming a fixture or fixtures in the building as its installation progressed. They had every reason to believe that the elevator company was looking for protection only to the personal liability of the owner or to its lien right against the building and the realty of which the elevator was becoming a part; just as appellants were looking for their protection to their mortgage and lien rights against the building and the realty of which the elevator was contemporaneously becoming a part.

Some contention is made in respondent's behalf rested upon the theory that the elevator plant was never actually completed and that possession thereof was and is retained by respondent. Just before the supervising architect certified to the completion of the building and elevator plant, the running of the elevator was tested by the parties concerned and found to be completed and in good running condition. Thereupon an agent of the elevator company took away with him the so-called reverse lever, the use of which was necessary to the starting and stopping of the elevator. This was an insignificant part of the elevator as a whole. This, it is insisted, was a retaining of possession of the elevator by the elevator company, from which it is argued that the elevator has never passed out of its possession, and is therefore not yet a fixture in the building. We think this position is wholly untenable. Neither the building nor the elevator is in the physical possession of the elevator company. Of course, it may well be said that no part of the elevator became a fixture and a part of the realty until it in law passed out of the possession of the elevator com-

pany, but we think each part of the elevator as it became permanently installed passed out of the possession of the elevator company, and that it is not necessary to fix the parting of such possession from the elevator company as to the whole of the plant at any particular time. Its several parts were constantly passing out of the possession of the elevator company, just as the advances made by Title Trust Company upon the mortgage and the material furnished by the other appellants passed out of their possession. Counsel calls our attention to the agreement retaining title in the material involved in *German Savings & Loan Society v. Weber*, 16 Wash. 95, 47 Pac. 224, 38 L. R. A. 267, which agreement provided for not only the retaining of title, but possession of the material furnished by the owner furnishing it until it was paid for. We have no such agreement here, and besides the retaining of possession, if such be the effect accruing in that controversy, was wholly foreign to the theory upon which that case was decided, which was simply that the mortgage was held inferior to the property right of the one furnishing the material under a contract reserving title to the property in him, because the mortgage was executed and the debt which it secured created long before the furnishing of such material, and the removal of the material would not in the least impair the mortgagee's security.

We have mentioned the fact that the contract between Real Property Investment Company and the elevator company, agreeing that title should remain in the latter until the elevator should be paid for, was never filed in the office of the county auditor as a conditional sale contract, merely for the purpose of making it plain that the question of constructive notice is not here for our consideration. We do not want to be

understood as intimating any opinion as to whether or not such filing of the contract would have required appellants to have noticed it and rendered it effective as against them.

We feel constrained to hold that the decree of the trial court should be modified so that appellants Title Trust Company, Inlaid Floor Company, and Seattle Marble & Tile Company shall be awarded foreclosure of their mortgage and lien claims as against the elevator plant as a part of the realty, and that the claim of property made by the elevator company in the elevator plant should be held for naught as against these mortgage and lien claims. It is so ordered, and the case is remanded to the trial court with directions to correct its decree accordingly.

HOLCOMB, C. J., TOLMAN, FULLERTON, MITCHELL, MACKINTOSH, and BRIDGES, JJ., concur.