# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed July 15, 1925.

OTIS ELEVATOR COMPANY
VS.
AMERICAN METER COMPANY, INCORPORATED.

*Mason P. Morfit* for plaintiff.

*Bartlett, Poe & Claggett* for defendants.

STANTON, J.—

The bill of complaint in this case alleges that the plaintiff, at the request of the West Construction Company, furnished a large quantity of materials of various kinds used in, and did a large quantity of work for or about the construction of two machines, known respectively as an electric passenger elevator and an electric freight elevator, placed in the building known as 301 East Saratoga street, and that there is now due and owing to the plaintiff for the materials so furnished and the work so done the sum of $6,100, with interest, from March 20th, 1924.

That the West Construction Company was the contractor for furnishing and erecting, and the American Meter Company was the owner of the machines.

That the plaintiff has filed a lien under Article 63 of the Code of Public General Laws, and has done all things necessary to perfect the right to enforce such a lien, and prays that a decree may be passed to enforce said lien.

The West Construction Company has been employed to erect a seven-story factory and warehouse for the American Meter Company, Inc., and as such contractor, engaged to supply the elevators referred to in the plans and specifications of the buildings for the consideration set out in the contract. The plans of the building left the necessary shafts or spaces in which the elevators were to be placed, but the working drawings for the elevators were prepared by the Otis Elevator Company, and were approved by the architect who prepared the original drawings for the building. The working drawings of the Otis Company as approved were controlling in the erection of the two elevators.

In the purchase of the elevators by the West Construction Company, the contract provided that title should not pass until the purchase price was paid in full. This conditional sale contract between the West Construction Co. and the Otis Elevator Co. was not recorded, nor was it ever brought to the notice of the American Meter Company, actually or constructively.

This contract is important on the point that, as between the owner and the Otis Elevator Company, the parties might contract so as to retain title, and maintain the character of personal property as movable chattels, even though they be attached to a building.

Lewis vs. Schlicter Co., 137 Md. 217-224; Baldwin vs. Francis, 118 Md. 177.

The Court of Appeals has said in the case of Schaper vs. Bibb, 71 Md. 149:

"As a general rule it may be stated that whether a thing which may be a fixture becomes a part of the building by annexing it, depends upon the intention with which it is done. The character of the physical attachment, whether slight or otherwise, and the use, are mainly important in determining the question of intention of the party making the attachment or annexation."

The installation of the elevators was intended to add to the convenient and customary use of the building. It was seven stories high, and many employees discharged their duties on the several floors in various parts of the building, as well as requiring some method for raising to the several floors the material for manufacture, and after being manufactured, for lowering for shipment, and such other purposes as arise in a large manufacturing plant.

The plaintiff contends that, irrespective of the convenience and use of the elevators they first are machines, and, as such, are subject to a lien under Section 22 of Article 63 of the Code of Public General Laws.

This remedy by liens on machines was put into the law of this State in 1845, probably before elevators were ever used in buildings. Some writers say that there were crude hoists or lifts for freight in use to a very limited extent in the middle of the 19th Century but that it was not until 1853 that an Otis elevator was first exhibited in the City of New York.

Whether strictly speaking the completed structure, independent of the building, is a machine, or only the hoisting and stopping apparatus, by which it is operated; is a question not free from difficulty, although in a very general and popular sense it may be spoken of and probably is regarded as a machine. Even so regarded it may become a permanent fixture in a building, depending on the intention of the parties.

The electric passenger elevator involved in this case consists of a car or cage, operated by a hoisting apparatus firmly fastened in the top of the shaft, which machinery rests on iron beams that are built into the wall of the building. The car, or cage, runs on guide rails which are held rigid by expansion screws put into lead pockets cut in the walls of the shaft, and requiring between fifty and sixty to hold the rails and other parts in a perfectly firm and rigid condition. As was said in King's case, supra: "Indeed it was installed and attached to the building generally speaking, in a manner quite familiar to every one who has occasion to visit such buildings. In all outward appearances it seems to be as much a permanent fixture, and a part of the building, and as necessary to the ordinary efficient use of the building, as any other permanently constructed part of the building." To remove the guide rails the screws must be taken out, leaving these leaden patches in the wall, and the removal of the beams on which the hoisting apparatus is placed would require defacement of the wall, and necessitate its repair by a certain amount of brick and cement work. And in addition to these facts all of the material which went into the construction of these elevators is said to be stock material, not especially made for these elevators, just as joists, flooring, pipes for heating and plumbing is stock material, cut to fit into the structure as it is erected.

As has been said, the owner might have agreed with the Otis Elevator Company that the material should remain personal chattels, and no title should pass until paid for, but such an agreement as was made can not bind the owner of this building, because the owner was not a party to the contract, and the West Construction Company was not the authorized agent for that purpose.

The Court of Appeals has said in the case of Stebbins vs. Culbreth, 86 Md. 657, in referring to a heating plant installed in a building: "The Legislature could never have intended to give a lien upon a structure such as the one described in this case. A machine within the contemplation of Section 4 of the Acts of 1845 (Code, Section 22, Article 63), is such a machine as is not an integral part of a building and has not lost its character as a movable chattel."

Here a new building was being erected with seven stories height. Its use and convenience required elevators. The plans were drawn to receive and install them. The owner covered the cost in the contract price and everybody dealt with the situation under the full belief that they were to be part of the building. They were constructed and installed without any intention to remove them unless to be replaced when outworn, as any other permanent fixture might require, but because the contractor became financially involved and failed, this lien is now sought to be enforced. The Otis Company might have strengthened its position by recording its conditional sales contract but did not.

The Court is of the opinion that the elevators are permanent fixtures and part of the building, and therefore, not subject to lien.

(King vs. Blickfeldt, 191 Pacific Rep. 748).

A decree will be signed dismissing the bill of complaint, with costs to the defendant.