[No. 24544. Department Two. December 11, 1933.]

PROVIDENT MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, *Appellant,* v. GRANT W. SMITH, *Individually and as Executor, et al., Respondents.*[1]

[1]Reported in 27 P. (2d) 580.

*E. R. York, Roberts, Skeel & Holman,* and *Harry Henke, Jr.,* for appellant.

*Stern & Stern* and *Allen Orton,* for respondents.

GERAGHTY, J.—This is an action brought by Provident Mutual Life Insurance Company of Philadelphia, as plaintiff, to enjoin Frigidaire Sales Corporation, Claude G. Bannick, as sheriff of King county, Washington, and another, defendants, from proceeding under replevin to repossess certain refrigerating equipment contained in an apartment house in the city of Seattle. The trial court entered a decree denying injunctive relief and dismissing the action. Plaintiff appeals.

As Frigidaire Sales Corporation is the only respondent having a material interest in the outcome, it will hereafter be referred to as if it were sole respondent.

The trial court made comprehensive findings of fact. In this court, appellant assigns error in the denial of injunctive relief and in the making of certain findings. In so far as any facts were in dispute, we think the court's findings were warranted. Do the findings sustain the court's decree?

The essential facts, as found by the court, are substantially as follows: On September 25, 1930, W. A. Gratias and wife executed a mortgage in favor of Burwell & Morford upon certain lots in the city of Seattle to secure advances to be made by the mortgagee for the erection of an apartment house upon the mortgaged premises. On March 4, 1931, Burwell & Morford assigned the mortgage to appellant.

On September 25, 1930, respondent, as vendor, sold, under a conditional sale contract, to Gratias, as vendee, the following Frigidaire equipment: Forty-five porcelain lined refrigerator cabinets, forty-five III T F coils and two compressors, being the equipment

in controversy here. The conditional sale contract
was filed with the auditor of King county on Jan-
uary 30, 1931. The court found that the delivery of
this equipment commenced on or about January 15,
1931, and continued up to and including February 11th,
at which time the delivery of the entire equipment cov-
ered by the contract was completed. There was some
conflict in the testimony as to the time of the actual
delivery upon the premises of the several parts of the
equipment. The court evidently took the view that,
while the material might have been stored upon the
premises at an earlier date, delivery within the terms
of the contract did not take place until the several
units were actually installed.

The court found that the mortgage was executed sev-
eral months before the commencement of the delivery
of the Frigidaire equipment, and that the mortgagee
had advanced to the mortgagor somewhat more than
fifty-six thousand dollars before the commencement of
delivery, without knowledge that the equipment would
be installed, and without relying upon its installation
as part of the security for the sums advanced and to
be advanced under the mortgage.

In view of its importance in determining our con-
clusion in the case, we set out in full the trial court's
finding No. VIII, in which is detailed the character of
the equipment and the manner of its installation:

"That the Frigidaire equipment covered by said
contract of conditional sale, and delivered in the afore-
said premises, was installed in substantially the fol-
lowing manner, to wit: That portion of said Frigidaire
equipment described as 45 porcelain lined cabinets is
composed of forty-five separate refrigerator cabinets,
and are placed one in each apartment of the building
situated upon said premises. Said cabinets are stock
models designed and manufactured for general sale
and are not in any way particularly or peculiarly

adapted to the premises in which same are located. Said cabinets are not fastened in any manner to the real estate, but are merely set in a space provided for that purpose and same may be removed without any material damage to the walls of said apartment building or to the other portions of said real property.

"That the Frigidaire equipment described as 45 III T. F. coils, consist merely of forty-five freezing units placed one in each cabinet. Said coils are in no manner fastened to the building but are fastened to the inside of the cabinets by four bolts provided for that purpose and removal of same can be accomplished with said cabinets, or separately, by unfastening said bolts and severing the tubing connections thereto. Removal of said coils as hereinabove set forth, including severance of tubing therefrom, in no manner does damage to the building or other portions of real estate, or to the cabinets in which said coils are placed, and the aforesaid tubing can be easily attached to replacement of similar refrigeration equipment. That said coils described in the conditional sale contract are stock equipment designed and built for general sale, and are in no way particularly or peculiarly adapted for use in the apartment building hereinabove referred to.

"That the equipment described in said conditional sale contract as two compressors is located in the basement of said apartment building, and is in no manner fastened to the floor or walls of said building but is merely set upon cork bases, which rest upon the floor, and said compressors are held in such position by their own weight. That said two compressors are connected to two copper tubings and two water pipes by ordinary plumbing connections which are easily detachable with an ordinary wrench and without damage to said pipes or tubings, or to other parts of said realty. That said compressors are stock equipment, designed and built for general sale, and are in no way particularly or peculiarly adapted for use in the premises where same are located.

"That all of said refrigerating equipment consisted of ordinary stock parts, and may be bought and sold in the open market, and same if removed from said

apartment building could be replaced by purchase in the open market.''

Did the Frigidaire equipment, being of the type and installed in the manner detailed in the finding, retain its chattel character after installation? The appellant earnestly argues that it lost its character as chattel and became an integral and essential part of the realty, and cites *King v. Blickfeldt,* 111 Wash. 508, 191 Pac. 748, as decisive in sustaining this contention. That case involved an elevator installed in a five-story apartment house in Seattle. The Otis Elevator Company sold the elevator under a conditional sale contract, which was not filed. This court held that the elevator was a fixture attached to the realty, and that the lien of an outstanding mortgage was superior to the right of the conditional vendor. The manner of installation and its relation to the building are set out in the opinion, from which we quote:

''Our principal inquiry being as to whether or not the elevator, upon its installation in the building, became such a fixture as to become a part of the realty as between the elevator company and appellants, there being no agreement between them, nor any agreement between the owner and the elevator company of which they had notice, as to the elevator plant remaining the property of the elevator company, and therefore personal property until paid for, it becomes necessary for us to note the relation of the elevator to the general use of the building, what the elevator plant consisted of, and the manner of its physical attachment to the building and the ground upon which it rests. The building is an apartment house of five stories, all of which the elevator was designed to serve. There was built into the building as a part of its original construction a permanent shaft for the elevator. One could hardly say that the elevator plant was of a special or peculiar type, or that, as to most of its parts, such as the car, cables, counterweights, etc., they were made especially for installation in this particular plant.

Indeed, most of its parts, viewed separately, could well be classed as stock parts. However, in its installation there was constructed as a part of the plant a concrete foundation in the basement, on which the engine or motor rested and was firmly fastened; the guideposts running up the sides of the shaft, both for the car and the counterweights, were firmly fastened to the building; and there were also other parts of the plant physically attached to the building. Indeed, it was installed and attached to the building, generally speaking, in a manner quite familiar to everyone who has occasion to visit such buildings. In all outward appearances it seems to be as much a permanent fixture and a part of the building, and as necessary to the ordinary efficient use of the building, as any other permanently constructed part of the building. One buying the property from the owner, or one taking a mortgage on the property from the owner, or one performing labor and furnishing materials for which he would have a lien upon the property would, we think, without question, assume from all outward appearances, he having no knowledge of any special agreement or understanding existing between the owner and the one who installed the elevator plant, that it was a permanent fixture and a part of the realty to which he could look as part of his security.''

It will be readily seen that there is but little similarity between the equipment involved in the *King* case and the case at bar, either in their structural relation to the buildings or in the manner of their installation. In the one case the elevator was integrated with the building and became a component and essentially structural part of it; in the other, the refrigerating cabinets and coils in the several apartments and the compressors in the basement were not structural parts of the building, and could be detached and removed therefrom without damage and with but little expense. After all, we are concerned here with forty-five separate refrigerating units, placed in as many

apartments, and two compressors in the basement. The tubing connecting the compressors with the cabinets was installed in the walls under a separate contract and as part of the building structure.

We think the case of *Zimmermann v. Bosse,* 60 Wash. 556, 111 Pac. 796, the opinion in which, as in the *King* case, was written by Justice Parker, more nearly approaches the solution of the problem here involved than the *King* case.

"Learned counsel for the plaintiff contend that the trial court erroneously decreed certain machinery to be personal property and not subject to the lien of the mortgage. This machinery consisted of a portable fire box boiler, engines, lathes, shafting, pulleys, belts, pipes, saws, carriages, conveyors, pumps, edgers, planers, exhaust fans, boring machines, emery wheels, dry-kiln apparatus, and other machines, tools and appliances. Nearly all of these things were in various ways attached to the floors, ceilings or posts of the buildings; but none were so attached but that they could be removed and taken from the buildings without injury to the buildings. It seems to us quite clear from the evidence that none of these machines and appliances were specially made for these buildings or for this plant. They were all known as standard or stock goods, and sold as such by catalogue and price lists by the manufacturers, and were suitable for use in any plant of this nature. It is true that the dry-kiln apparatus appears to have been made up of different parts put together in the building, and in that sense it might be said to have been made for the plant; but the evidence tends to show that such parts were like the other machines and appliances, stock goods. Under prior decisions of this court, we think it follows that these machines and appliances are not fixtures, but personal property, and hence not subject to the mortgage. *Cherry v. Arthur,* 5 Wash. 787, 32 Pac. 744; *Chase v. Tacoma Box Co.,* 11 Wash. 377, 39 Pac. 639; *Washington Nat. Bank v. Smith,* 15 Wash. 160, 45 Pac. 736; *Philadelphia Mtg. & Trust Co. v. Miller,* 20 Wash. 607,

56 Pac. 382, 72 Am. St. 138, 44 L. R. A. 559; *Neufelder v. Third St. & Suburban R.*, 23 Wash. 470, 63 Pac. 197, 83 Am. St. 831, 53 L. R. A. 600; *Sherrick v. Cotter,* 28 Wash. 25, 68 Pac. 172, 92 Am. St. 821.'' *Zimmermann v. Bosse*, 60 Wash. 556, 111 Pac. 796.

In the case at bar, the intention of the parties, the stock type of equipment, the manner of installation, and the possibility of removal without material damage, all concur in establishing the chattel character of the equipment. Since the Frigidaire equipment always retained its chattel character, it did not become subject to the lien of appellant's mortgage.

Having reached this conclusion, it is unnecessary to pass upon the questions raised by the parties as to the timeliness of the filing of the conditional sale contract or its effect as notice.

The decree of the lower court will be affirmed.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ., concur.