[No. 2229. Decided December 8, 1896.]

THE GERMAN SAVINGS AND LOAN SOCIETY, *Appellant,* v. C. F. WEBER *et al., Respondents.*

FIXTURES — INTENT OF PARTIES — RIGHTS OF PRIOR MORTGAGEE.

Whether fixtures attached to real estate should be regarded as personalty or realty is largely governed by the intention of the contracting parties, even so far as the rights of a former mortgagee are concerned, subject to the limitation that the fixtures, which, but for the stipulation, would be regarded as realty, can be removed only when such removal can be effected without injury to the real estate.

An agreement between the owner of a building and a person furnishing building fixtures therefor, known as the "standing finish," consisting of window and door sashes, doors, jambs and trimmings, wainscoting, base boards and mantle piece, that such materials were to be regarded as personal property belonging to the material man, although affixed to the building, will control as against a prior mortgagee of the realty, when such fixtures can be removed from the building without injuring the realty or impairing the security of the mortgagee as it existed at the time they were affixed.

Appeal from Superior Court, Spokane County.— HON. JAMES Z. MOORE, Judge. Affirmed.

*Cyrus Happy,* for appellant.

*Forster & Wakefield*, and *Everett C. Ellis*, for re
spondents.

The opinion of the court was delivered by

DUNBAR J.—This case is submitted upon an agreed
statement of facts.    The facts were about as follows:

That on the 27th day of May, 1892, A. M. Cannon
and Jennie F. Cannon, his wife, who were the owners
in fee simple of certain lots in Spokane Falls, for a
valuable consideration executed and delivered to the
plaintiff (appellant herein), the German Savings and
Loan Society, a mortgage upon said lots, together with
all and singular the tenements, hereditaments and
appurtenances thereunto belonging, or in any wise
appertaining.    This mortgage was duly recorded on
the 2d day of June, 1892, and none of the indebted-
ness for which it has been given has been paid.

That upon a portion of said lots Cannon and wife
erected a building for the purpose of carrying on a
banking business ; that said building has never been
occupied, but that said Cannon contracted with the
respondents, C. F. Weber and Company, to put in said
building what is known as the standing finish, con-
sisting of window and door sashes, jambs and trim-
mings, wainscoting, entrance doors, sidedoor, two
small doors in rear, including glass and hardware,
baseboards and wainscoting, mantle piece without til-
ing and footings—in all amounting to $3,667.32.

That in pursuance of said contract said C. F. Weber
and Company manufactured and shipped to Spokane
said standing finish, and that they then learned that
said Cannon was unable to pay for the same, and
thereupon the said Cannon and his wife entered into
an agreement on the 1st day of July, 1893, with the
said C. F. Weber and Company, to the effect, in brief,

that C. F. Weber and Company should retain possession of said property and said buildings as aforesaid until they were fully paid for according to the terms of their contract, or until other arrangements were made satisfactory to the said C. F. Weber and Company, and in the meantime the ownership and possession of said property was to remain with the said C. F. Weber and Company. That under said agreement, C. F. Weber and Company placed their said property in the bank building, that the glass had been put in the sash and the sash put in the windows; that the jambs and trimmings had been fastened to the building by screws, and the wainscoting and other finish had been fastened to the building by screws; the wainscoting being screwed to a furring strip running horizontally around the said building at the top of the wainscoting; that the room was only plastered down to the top of the wainscoting, and behind the wainscoting, baseboards, etc., was plain brick. And the agreement further provides that all of said property described in said Exhibit C could be removed without damage or injury to the building other than the loss to the realty, if it should be determined that it is such a part of the realty that the said parties would have no right to remove it.

It is the contention of the respondents, that C. F. Weber and Company, under the terms of the contract have the right to remove said property as shown in Exhibit C referred to above, by leaving the building in substantially the same condition that it was in before the said property was placed in said building; and the German Savings and Loan Society (the appellant here) claims that said property has become a part of the realty, that it is covered by its mortgage, and that the said parties have no right to remove it.

The judgment of the court was in favor of C. F. Weber and Company, and from such judgment an appeal is taken to this court.

The history of litigation on the subject of fixtures and annexations is to the effect that it has always been considered largely a mixed question of law and of fact, depending upon the relations of the parties, the character of the fixtures, and the manner of the annexation, very largely in each particular case. It can not be denied, however, that the old common law in relation to fixtures being construed as a part of the realty has been greatly modified in modern times by reason of the changing conditions of trade, and for the purpose of protecting traffic in building fixtures.

The contention of the appellant in this case is two-fold:   First, that as between the parties to this contract, the goods supplied here became a part of the real estate, and that they had no right to stipulate or agree that real estate was personal property, and that such agreement could not be carried into effect by the court; and second, that even conceding the efficacy of such an agreement between the parties, the mortgagee in this case could not be bound by the agreement, and consequently his rights would not be affected thereby, and that the question of intention could not be made to apply against his interests.

We are satisfied that the trend of modern authority is to the effect that the intention of the contracting parties should be allowed to control, and that intention will control, even so far as the rights of the former mortgage is concerned, subject to the limitation that the fixtures, which outside of stipulation would have, under the law, been regarded as real estate, can be removed only when such removal can be effected without injury to the real estate, or to the

building to which they are attached. We think this is the almost unbroken current of modern authority, and is even borne out by most of the cases cited by the appellant.

The appellant, on page 10 of his brief, cites the following from Mr. Ewell in his work on Fixtures, page 68:

"A limitation to the rights of the parties to change, by their agreements, the status of property from that which the law would assign to it in the absence of a special agreement, has, however, been made in some cases, and the rule has been stated to be, that whether an agreement shall preserve the character of personalty in things so affixed to the freehold, as that but for such agreement, they would become part of the realty, depends upon their essential character, and the mode in which they are annexed, e. g., whether they can be removed without serious damages to the freehold, or substantially destroying their own qualities and value."

Applying this test to the case at bar it does not appear that any damage would be done to the freehold by the removal of these fixtures, in fact, it is stipulated that no damage would be done other than loss to the realty of the value of the fixtures, and they are of such a nature that it seems to us that their value would not be destroyed as merchandise : therefore the rights of the mortgagee have not been deleteriously affected by the removal of these fixtures, for the building upon which his lien attached has lost nothing in value, and his security has been in no way affected by reason of the entering into this contract between his mortgagor and C. F. Weber and Company. This limitation to contract with reference to fixtures is even severely criticised by Mr. Ewell, in the section above referred to, excepting where it affects

the rights of third parties.   The author, continuing,
says :

"Where the rights of third parties intervene, the
propriety and necessity of such a limitation will be
very readily conceded ; but, as between the immediate
parties to the agreement, the limitation seems, to say
the least, sufficiently strict; and where, as in the case
of a house, the materials might be of value after
severance, no ·more reason is perceived why such an
agreement should not be effectual as between the par-
ties, than in the case of a fixture that might be
removed uninjured, the difference between the two
cases being not one of principle, but simply degree,
one of more or less."

Mr. Ewell, to sustain this proposition, cites the case
of *Ford v. Cobb*, 20 N. Y. 344, also cited by the appel-
lant in this case, where Judge DENIO, in rendering
the opinion for the court, said :

"It will readily be conceded that the ordinary dis-
tinction between real estate and chattels exists in the
nature of the subject, and cannot in general be
changed by the convention of the parties.   Thus, it
would not be competent for parties to create a per-
sonal chattel interest in a part of the separate bricks,
beams, or other materials of which the walls of a
house were composed."

Of course it would not, for under such circum-
stances the realty would be more or less injured or
destroyed, and the court in that case proceeds to verify
this idea, for it says :

"Thus, a house or other building, which from its
size or the materials from which it was constructed,
or the manner in which it was fixed to the land, could
not be removed without practically destroying it,
would not, I conceive, become a mere chattel, by
means of any agreement which could be made con-
cerning it.   So of the separate materials of a building,
and things fixed into the wall, so as to be essential to

its support; it is impossible that they should by any arrangement between the owners become chattels."

But the court emphasizes the test which we have above referred to by proceeding to say:

" But it is otherwise with things which, being originally personal in their nature, are attached to the realty in such a manner that they may be detached without being destroyed or materially injured, and without the destruction of, or material injury to the things real with which they are connected ; though their connection with the land or other real estate is such that in the absence of an agreement or of any special relation between the parties in interest, they would be a part of the real estate."

And that court cited approvingly *Fryatt v. The Sullivan Co.*, 5 Hill, 116, stating that that case was decided upon this distinction. That case was where a certain steam boiler and engine were leased, and the lessees took them and affixed them so firmly to the freehold that they could not be removed without destroying the building in which they were placed. The case of *Ford v. Cobb, supra,* is in point in all particulars, for there, as here, the right of a prior conveyancer was brought in question.

*Binkley v. Forkner*, 117 Ind. 176 (19 N. E. 753), is a well considered case and there it was held that

"Where one purchasing machinery gives a chattel mortgage for its price, and orally agrees that it shall be treated as personalty until paid for, and the realty to which it is afterwards attached by him will not be injured by its removal, the machiney will be considered as personal property, as against a prior mortgagee of the realty."

And the cases relied upon by the appellant in this case are distinguished in that case. Thus, where the case of *Campbell v. Roddy*, 44 N. J. Eq. 244 (6 Am.

St. Rep. 889, 14 Atl. 279), is quoted, the court made use of the following language :

"Thus, if, in the course of constructing a house, brick should be placed in the walls, and joists and beams in their proper places, the brickmaker and sawyer would not be permitted to despoil the house by asserting an agreement with the owner that the brick and beams were to retain their character as personalty notwithstanding their annexation."

After citing cases, the court goes on to say:

"But when chattels are of such a character as to retain their identity and distinctive characteristics after the annexation, and do not thereby become an essential part of the building, so that the removal of the chattels will not materially injure the building, or destroy or unnecessarily impair the value of the chattels, a mutual agreement in respect to the manner in which the chattels shall be regarded after annexation will have the effect to preserve the personal character of the property between the parties to the agreement."

It was held there that

"A prior mortgagee cannot occupy the attitude of an innocent purchaser. The interests and rights of the holder of a chattel mortgage upon property which is annexed to real estate upon which there is an existing mortgage, must be determined by the practical application of equitable principles to the rights of the respective parties. Whether the chattel mortgage shall be postponed, notwithstanding the agreement between the owner of the land and the mortgagee, must depend upon the inquiry whether or not the preservation of the rights of the holder of the chattel mortgage will impair or diminish the security of the real estate mortgagee *as it was when he took it.* If it will not, then it would be inequitable that the latter should defeat or destroy the security of the former. If it will, then it was the folly or the misfortune of the holder of the chattel mortgage that he permitted the property to be annexed to a freehold from which it

cannot be removed without diminishing or impairing an existing mortgage thereon.

This is only announcing the rule which we announced at the outset,—that an agreement by which fixtures should be considered personal property can be carried into effect, if the removal of the same could be effected without injuring the real estate, or, applying it to this case, without diminishing the security of the mortgagee.

In *Tifft v. Horton*, 53 N. Y. 377 (13 Am. Rep. 537), it was held:

"Where chattels are annexed to real estate with the intent that they shall not thereby become part of the freehold, as a general rule the intent will control; to preserve their character as personalty a concurrent intent, on the part of a prior mortgagee of the real estate, is not necessary; and neither a prior nor subsequent mortgagee of the lands can claim, as subject to the lien of his mortgage, chattels brought upon and affixed to the lands under an agreement between the owner of the fee and the owner of the chattels, that the character of the latter as personal property is not to be changed, and that they are subject to a right of the owner to remove them."

This case squarely decides all of the points that there are raised in the case at bar. It is a well considered case and has been cited by nearly all the cases that have been adjudicated on this subject since its decision.

We think it announces the overwhelming weight of authority that the security of the appellant in this case has not been diminished by the agreement which was entered into and executed by the mortgagor and the respondent, C. F. Weber & Company, and that there is no reason, which can be sustained by either legal or equitable principles, why the respondents in this

case should not have the benefit of the contract which they made with the Cannons.

The judgment will be affirmed.

SCOTT, ANDERS and GORDON, JJ., concur.