[No. 9449.   Department Two.   July 11, 1911.]

## CHARLES I. WELSH *et al.*, *Respondents*, v. RONALD McDONALD, *Appellant*.[1]

FIXTURES—BUILDINGS—TRADE FIXTURES—LANDLORD AND TENANT. Mill and camp buildings are removable before the expiration of the terms as trade fixtures, under a lease for the purposes of a mill site for a shingle mill.

FIXTURES—LANDLORD AND TENANT. A tenant does not lose the right to remove trade fixtures before the end of the term by attorning to a successor in interest of the landlord, without any notice to quit or termination of the original tenancy.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered October 15, 1910, upon the

[1]Reported in 116 Pac. 589.

verdict of a jury rendered in favor of the plaintiffs, in an action in tort. Reversed.

*Troy & Sturdevant*, for appellant.
*Thomas M. Vance*, for respondents.

DUNBAR, C. J.—The plaintiffs brought this action for alleged injuries to real property committed by the defendant, alleging that plaintiffs were the owners of certain described property whereon were situated mill buildings, camp buildings, barns, and outhouses, which were a part of the described real property belonging to the plaintiffs; that the defendant had wantonly and recklessly destroyed the said buildings, torn them down, and shipped them away, converting the material constituting them to his own use; alleging the value of the buildings to be $1,000; alleging damages in that sum, and demanding judgment therefor. The defendant answered, admitting the tearing down and removal of the buildings aforesaid, but alleging affirmatively that he was in the occupancy by lease of a portion of the premises described in the complaint; that theretofore the owners of the portion of the premises upon which the shingle mill was situated leased the same to Messrs. Craft & Son for mill purposes and for a sawmill site; that after the lease of same by Craft & Son, they erected a shingle mill thereon, and constructed certain works and buildings to house and cover the said shingle mill, and certain bunk houses to be used in connection therewith; that each and all of said buildings were erected for mill purposes; that by mesne conveyances the defendant afterwards became the owner, long prior to July 1, 1909; and that prior to the expiration of said lease on the 1st day of July, 1909, the defendant removed all of the said mill machinery and the portion of said mill buildings used in connection therewith; alleging that he had good and lawful right so to do. Upon these issues the case went to trial to a jury, resulting in verdict for plaintiffs in the sum of $453.35.

Judgment was entered upon this verdict, and appeal followed.

At the time of the original lease, all the property mentioned in the complaint was owned by one Edward Callow, and it was leased by him to Craft & Son by the following informal contract:

"Contract for lease of land for mill site, by and between E. Callow, parties of the first part, and Craft & Son, parties of the second part.

"Mr. E. Callow agrees to give said Craft & Son lease to use for a mill site five acres of land situated in the S. W. of S. E. 4, section 28, township 19, N. R. 4 West. Said 5 acre situated in southeast corner of said forty. Said lease to run as long as said Craft & Son want it for a mill site. Said Craft & Son to pay twenty-five dollars a year, one-half when mill is completed and one-half every six months thereafter as long as used for mill site.

"(Signed)     Edward Callow
                    "Craft & Son."

Subsequent to the execution of this lease and the erection of the buildings mentioned in the complaint, Mrs. Callow, wife of Edward Callow, after the death of Edward Callow, sold to the respondents 120 acres of land, in the body of which were embraced the five acres described in the lease above set forth.

The appellant assigns many errors, but with the view we take of the main proposition in the case, it is not necessary to discuss them, as it appears conclusively to us that, under the circumstances as shown at the trial, the plaintiffs were not entitled to recover. The determinative question is, Were the houses which were torn down and removed, trade fixtures within the contemplation of the law? There is no intention, in relation to the permanency of these buildings, to be gathered from the lease; so that the question will have to be determined by the character of the buildings, or by intention shown outside of the instrument of lease. It is conceded that the old common law rule in relation to fixtures has been

greatly modified, and that many things which under that rule were held to be fixtures are now regarded as trade fixtures, the removal of which by the tenant is permitted. It is said in 19 Cyc. 1047:

"If the annexation is not intended to be permanent, the chattel will not be deemed a fixture. As it is sometimes expressed, 'it must be for the benefit of the inheritance.' The degree and mode of annexation may be looked at, and whether it is to make the chattel or the land more useful."

The testimony shows that all these buildings were erected exclusively for the benefit of the milling business which was carried on by the lessors. Many of the small houses were built by the laborers employed by the mill owners, and the laborers were charged by the mill owners for the lumber which was used in the construction of said small houses.

"That articles which are annexed by the tenant for purposes of trade, known as 'trade fixtures,' are removable by him as against the landlord, has been recognized from an early period in the development of the law of fixtures, the theory being that it is public utility that the tenant should be enabled to improve the property for the purpose of carrying on trade, without thereby forfeiting his improvements." 1 Tiffany, Modern Law of Real Property, § 240.

"The strict rule of the early common law under which chattels which had been physically annexed to the freehold became the absolute property of the landlord has been gradually and greatly relaxed in favor of tenants. The first exception to this rule was made in the case of trade fixtures so called such as were placed upon the premises by the tenant during the term for the purpose of carrying on trade, commerce or manufacture. It is now a general rule that whatsoever is affixed, as a trade fixture to the land or to any building which is on the land during the term whether made of wood, stone, iron or other material, is removable by the tenant at the end of the term. And it is difficult to conceive of any so-called fixture, however solid, permanent and closely attached to the realty which is placed there for the sole purpose of trade which may not be removed by the tenant at the end of his term." 2 Underhill, Landlord & Tenant, § 736.

Under this modern rule it has been uniformly held that a building erected upon leased land for the purpose of carrying on the business of the lessee was removable at the will of the lessee, provided it was removed during the term of the lease. We will not cite further authority on this proposition, for as we understand it, the rule is practically conceded by the respondents, for it is said in their brief:

"There need be no contention on the general question that known and recognized trade fixtures, even though they constitute things that might become and be part of the realty, are removable unless it is understood that they are to remain and become part of the real property."

It is, however, contended by the respondents that there was an understanding that the houses should remain upon the land, as shown by the testimony of Mrs. Callow. The testimony relied upon is as follows:

"Q. Do you remember the occasion of your late husband entering into a contract with Craft & Son? A. Yes, sir. In fact, my husband was sick at the time, so I did most of the business myself. Q. Do you remember that at that time or subsequently there was any conversation or agreement between yourself and Craft & Son or your husband and Craft & Son as to the title of the buildings that might be erected there? A. No. No more than what Mr. Craft gave yesterday. The agreement was just as he testified. He stated just word for word as it was. It was simply understood that he would leave the buildings."

But an examination of the record shows that Mrs. Callow was mistaken as to what Mr. Craft testified. We are unable to find any testimony of Mr. Craft in relation to the agreement as to whether the buildings should remain on the ground or not. During the examination of Mr. Craft, counsel for respondents asked the following question: "At the time of the signing of that instrument or at any time thereafter, was it agreed that the buildings erected by the contractee in that instrument (exhibit 2) might be removed by him and be his own personal property?" By Mr. Troy: "I object to that

as being incompetent, irrelevant and immaterial." The objection continued for other reasons. By Mr. Vance: "I think the former part of the objection is well taken, but I do not understand the latter part of it." The question was then withdrawn, and counsel proceeded to examine the witness in relation to the value of the buildings. But the subject of the understanding at the time the contract was entered into was not resumed. Nor was there any other testimony on the subject worthy of attention. So that the case must stand squarely upon the temporary or permanent character of the structures.

It is also contended by counsel for respondents that it is a well-settled principle that even if things are of such character that they may be taken to be trade fixtures, if there be a new lease contract made between the landlord and tenant, or if there be a change in ownership and possession and a new contract made between the tenant and the new landlord, without mention and reservation, the things remaining upon the land are recognized by the new parties as part of the realty and attaching thereto. And that, inasmuch as the defendant in this case attorned to the new landlord after the sale to him of the premises by Mrs. Callow, this rule would apply to this case. Counsel cite, to sustain that rule, the case of *Carlin v. Ritter*, 68 Md. 478, 13 Atl. 370, 16 Atl. 301, 6 Am. St. 467. The rule laid down in that case was that, where the tenant had received notice to quit at the end of current year and did not do so, but after the expiration of the year obtained and accepted from the landlord a written lease of the premises "together with all the rights, appurtenances and privileges thereunto belonging or in any wise appertaining," but containing no reservation of the right to remove the fixtures then on the premises, the tenant would be estopped from removing such fixtures at the end of or during the life of the second lease. This was on the theory that the tenant's right to remove was considered rather a privilege allowed him than an absolute right to things themselves; that, inasmuch as they were not

removed before the expiration of the lease or during the time in which he had a right to remove them, he accepted them as the property of the landlord when he accepted the second lease; and that the right to possess the land and the fixtures as part of the realty vests immediately in the landlord at the expiration of the lease; the court saying in this connection:

"Although the landlord has no right to complain if the land be restored to him in the same plight it was before he made the lease, yet if the land is suffered to return to him with additions and improvements, even by forfeiture or notice to quit, he has a right to consider them as part of his property. Nor is this any injustice to the tenant; since it is his own fault if he suffers the land to return to the landlord with the fixtures annexed. This rule had its foundation in the presumption of abandonment, arising from the conduct of the tenant in quitting the premises, and leaving his fixtures behind him; . . ."

In that case it was said by the court:

"Here the tenancy by the year was put an end to at a definite period by the notice to quit, and the tenant was left in no uncertainty as to when his term would expire."

This principle is also noticed in 1 Tiffany, Modern Law of Real Property, § 240, where it is said:

"If the tenant takes a new lease, without any stipulation on the subject, he loses, by perhaps the weight of authority, the right to remove the fixtures."

But whatever may be said of the justice of this rule, it can have no application to the case at bar, where there was no notice to quit and no cessation for any length of time of the right of the tenant to maintain his lease.

We are unable, under any view of the law or of the facts, to determine that the respondents had any right whatever to recover. The judgment will therefore be reversed.

ELLIS, CROW, MORRIS, and CHADWICK, JJ., concur.