Holcomb, J.
 

 This action was brought by respondents to recover from appellants certain articles of property and the cost of restoring them in the place from which they had been taken.
 

 After trial to a jury, some conflicts in evidence being resolved in favor of respondents, a verdict was rendered granting respondents three itemized accounts of $410 on account of timber; $1,260 on account of the monorail; and $112 on account of trolley wire, aggregating $1,782.
 

 The complaint alleged that the timber, monorail and trolley, which was a part of the monorail, belonged to and was a part of an extremely long narrow building on land owned by respondents; that the building and structure on the land had been built and designed expressly for such monorail, timber and trolley foundations ; the exact allegation was:
 

 “That said building and structure on the said premises was built and designed for the purpose of installing, using and maintaining said monorail, water pipe, trolley wires and the said timber foundations.”
 

 The monorail was alleged to be 560 feet long, together with approximately 1,120 feet of copper wire trolley, about 560
 
 feet
 
 of six-inch wood pipe, together with connections and attachments thereto, and also about 40,000 feet of timber and lumber, all of which appellants detached from the building to which they belonged and wrongfully and unlawfully removed the same; that at the time all of the property belonged to and still belongs to respondents; that the value thereof was $2,500; that demand had been made upon appellants to return to the premises described in the com
 
 *621
 
 plaint all of the monorail, wire, water pipes, timber, lumber, connections and attachments, which had been so removed from the building and premises, and that they forthwith install, attach and connect the same in the same condition in which they were before they were removed; that appellants failed, neglected and refused to return any of the property to the buildings and to restore, install, attach, or connect the same, or any part thereof; that, after the return of the property to respondents, the cost of installing, attaching, connecting and restoring the same in condition in which the same were when taken will exceed $1,000.
 

 Appellants answered the complaint, denying upon information and belief the ownership of respondents as alleged, and denied generally the remaining allegations.
 

 The only assignments of error made by appellants are based upon the refusal of the court to give requested instructions Nos. 3, 4, 7 and 8. Bequest No. 3 was one to the effect that, as a matter of law, respondents had no title to the monorail sued for in the action and no right to its possession, and that, as to it, the verdict should be for appellants. Bequest No. 4 was of like effect as to the 1,120 feet of copper trolley wire sued for in the action. Bequest No. 7 was to the same effect as to the 40,000 feet of timber and lumber sued for. And request No. 8 was a general request to return a verdict for appellants.
 

 The record discloses that respondents acquired the land upon which the building in question was situated from Snohomish county by deed. The county had acquired it by general tax foreclosure for delinquent taxes covering the taxes for 1917 and subsequent years, in October, 1924. The whole assessment had been upon real estate, a portion of which was for the land itself and a portion for the improvements.
 

 
 *622
 
 Rem. Comp. Stat., § 11098, prescribes:
 

 “Real property for the purposes of taxation shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind, thereon, . . . ”
 

 Under that statute, we have decided that such improvements or fixtures should be assessed as part of the real estate.
 
 Doe v. Tenino Coal & Iron Co.,
 
 43 Wash. 523, 86 Pac. 938;
 
 Turner v. Spokane County,
 
 150 Wash. 524, 273 Pac. 959.
 

 It is beyond question, under the statute and our decisions, that, when the improvements and fixtures on the land were taxed with and as part of the real estate, the county acquired all of the property as such. That is conclusive as between the owner and the county and is incontestable as between the county and its grantees.
 

 Respondents contend that it is also conclusive between the county’s grantees and all other parties.
 
 Maryland Realty Co. v. Tacoma,
 
 121 Wash. 230, 209 Pac. 1, reaffirmed in
 
 Tacoma v. Fletcher Realty Co.,
 
 150 Wash. 33, 272 Pac. 43, is quoted and relied upon, as follows:
 

 “Where the county forecloses a certificate of delinquency on account of general taxes and buys in at the sale and later sells the property to a private individual, it initiates and creates a new title to the property, which the private individual takes free and clear of any kind or character of prior liens. ’ ’
 

 Manifestly, the state can classify any kind of property, which is sometimes classified as one and sometimes as the other, as either real or personal property for the purpose of taxation. This is done in the interests of simplification and certainty.
 

 Obviously, when a county forecloses a certificate of
 
 *623
 
 delinquency on real estate on account of general taxes, and Buys it in at the sale, a new title is created as to everything that can he construed as real estate, which the private purchaser takes free and clear of any other prior liens. There are no other or prior liens involved in this case; hence those decisions do not apply here.
 

 As to the nature of the articles in dispute, the evidence disclosed that they were in a Big shed constructed by appellants and used as a part of the equipment of a mill at Lake Stevens formerly owned and operated by them. This shed was used by them for the purpose of storing lumber. The lumber was carried from the mill along the monorail and deposited at suitable places in the shed. The shed was a long, narrow building, about thirty feet wide at the bottom, fifteen or sixteen feet wide at the top, about forty feet high, about 560 feet long and covered over by a roof. The roof of the shed rested upon twelve by twelve timbers. These are about twenty feet apart and are referred to as bents. There were other timbers in between these bents. There were puncheons, or mud sills, on the ground. On top of the timbers supporting the roof were other timbers called cap tops, and to these cap tops the monorail was fastened with four bolts to each cap top.
 

 The monorail was an I-beam. It was fifteen inches up and down, and about five and three-fourths inches wide. It was fastened together every forty feet by a coupling fastener. The copper trolley wire was fastened to the monorail by cross-arms. The trolley wire was used in the operation of the monorail, and the monorail was fastened by bolts to the timbers near the roof of the shed. The timbers which were removed were spiked to each other and spiked to the building by forty-four-penny spikes. They were about ten inches long. Several witnesses testified that the trolley
 
 *624
 
 wire was an integral part of the monorail; that the monorail and the trolley made one great beam which held the building rigid and about which the building was constructed. There was evidence that the great monorail beam materially strengthened the building. There was testimony, also, that the building was a monorail building designed for the monorail and built around it.
 

 As refutation of the evidence on behalf of respondents, appellants seem to rely entirely upon the evidence of one of appellants as to the intention when annexing the articles, as follows:
 

 “.
 
 . . "When we constructed the monorail system, we constructed it in such a way that we might have to take it out on account of the cost of hauling, and we put it up in such a way that we could change it to the north end closer to the mill if we didn’t have enough business to justify the long haul. And we didn’t have enough business to justify the long’ haul. ’ ’
 

 Appellants assert that this evidence is undisputed and therefore controlling. The jury was not bound by it as uncontradicted evidence, nevertheless. As interested testimony, the jury could reject it, draw inferences from all the existing circumstances, and accept other evidence even though interested. The weight and credibility of the testimony of the parties, whether interested or not, were for the jury to determine. The jury found against appellants.
 

 Appellants contend that they were entitled to have the requested instructions given, and that, as to such articles as those in suit, this court has determined the matter by such cases as
 
 Cherry v. Arthur,
 
 5 Wash. 787, 32 Pac. 744;
 
 Washington National Bank v. Smith,
 
 15 Wash. 160, 45 Pac. 736;
 
 German Savings & Loan Society v. Weber,
 
 16 Wash. 95, 47 Pac. 224, 38 L. R. A. 267;
 
 Philadelphia Mtg. & Trust Co. v. Miller,
 
 20 Wash.
 
 *625
 
 607, 56 Pac. 382, 72 Am. St. 138, 44 L. R. A. 559;
 
 Hall v. Law Guarantee & Trust Society,
 
 22 Wash. 305, 60 Pac. 643, 79 Am. St. 935;
 
 Neufelder v. Third Street & Suburban R.,
 
 23 Wash. 470, 63 Pac. 197, 83 Am. St. 831, 53 L. R. A. 600;
 
 Filley v. Christopher,
 
 39 Wash. 22, 80 Pac. 834, 109 Am. St. 853;
 
 Gasaway v. Thomas,
 
 56 Wash. 77, 105 Pac. 168, 20 Ann. Cas. 1337;
 
 Zimmermann v. Bosse,
 
 60 Wash. 556, 111 Pac. 796; and
 
 Hill’s Garage v. Rice,
 
 134 Wash. 101, 234 Pac. 1023.
 

 It seems to ns that appellants misconstrue the cases cited and relied upon. For instance, in the
 
 Zimmermann
 
 case,
 
 supra,
 
 it was stated that it was clear from the evidence that none of the machines and appliances involved in that case were specially made for these buildings or for that plant. They consisted of standard or stock goods sold as such by catalog and price lists by manufacturers, and were suitable for use in any plant of that nature.
 

 Filley v. Christopher, supra,
 
 stated the criterion of a fixture is the united application of these three requisites :
 

 “ (1) Actual annexation of the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold.”
 

 We have never consciously departed from that statement of the law; but, as was said in the
 
 Gasaivay
 
 case,
 
 supra,
 
 when we come to apply the definition and the criterion to the multifarious facts that arise in the complex affairs of a busy world, we are confronted with a difficult task.
 

 The last cited case involved mining machinery, used for prospecting, belonging to a purchaser of a mine
 
 *626
 
 under a contract subsequently forfeited. The
 
 Miller
 
 case,
 
 supra,
 
 involved mantles of a kind carried by dealers adaptive to any kind of house, hot water heaters and bath tubs; all readily detachable and removable. The
 
 Hall
 
 case,
 
 supra,
 
 involved electric light fixtures and globes, a windmill, a hot water tank, curtains and screens. In the
 
 Weber
 
 case,
 
 supra,
 
 there was a special agreement that the things should be regarded as personal property until paid for.
 

 In the
 
 Miller
 
 case,
 
 supra,
 
 we held that the question of whether or not an article is a fixture is a mixed one of law and fact, and, where the question has been determined by the jury under proper instructions, their verdict will not be disturbed unless it is clear, as a matter of law, that the furniture and machinery was, in fact, a part of the realty. Manifestly, the reverse is true, that the verdict, if rendered under proper instructions, will not be disturbed unless it is clear as a matter of law that the articles in question were not a part of the realty.
 

 We have many times held that, when the annexation of a fixture is made by the owner of the property, the presumption is that it was annexed with the intention of enriching the freehold. The last decision to that effect was
 
 Hall v. Dare,
 
 142 Wash. 222, 252 Pac. 926, citing our previous eases.
 

 We are compelled to conclude that, under the evidence in this case which the jury were warranted in resolving in favor of respondents, there was actual annexation to the realty, or something appurtenant thereto; that there was application to the use or purpose with which that part of the realty was connected when so appropriated; and that the intention of the party making the annexation, who was the then owner of the major part of the premises and that part to
 
 *627
 
 which the annexation was made, was to make a permanent annexation to the freehold.
 

 This case is therefore in line with the cases of
 
 Cherry v. Arthur; Filley v. Christopher, supra; King v. Title Trust Co.,
 
 111 Wash. 508, 191 Pac. 748; and
 
 Hall v. Dare, supra.
 

 The trial court was right in refusing the requested instructions of appellants.
 

 Respondents also appeal from the refusal of the trial court to enter judgment as proposed by them and in entering judgment that appellants need only return the monorail and trolley in substantially as good condition as when taken.
 

 Their argument is that, since the jury determined that the taking of the articles in suit was wrongful and unlawful, the only way respondents could be made whole was for all that property to be returned to .the premises and restored and connected in the same way that it was before taking.
 

 No cases are cited by respondents upon this branch of the case, but we consider that, when the value of the articles taken is determined and the property either returned to respondents entirely, or the value thereof paid as found by the jury and adjudged by the court, inasmuch as they owned no mill in that vicinity and could not continue the use of this property in the building as a mill and storage place for a mill, as-the trial court held, the articles now have no more than a
 
 “
 
 junk value.”
 

 We therefore conclude that respondents are entitled to no relief upon their cross-appeal.
 

 Consequently, the judgment is affirmed on the appeal of defendants as the principal appellants and also on the appeal of respondents as cross-appellants.
 

 Both parties having appealed and neither hav
 
 *628
 
 ing recovered a more favorable judgment on appeal, costs will not be allowed to either.
 
 Zimmermann v. Bosse, supra.
 

 Mitchell, C. J., Fullerton, Main, and Tolman, JJ., concur.