[No. 29252. Department One. June 26, 1944.]

WESTINGHOUSE ELECTRIC SUPPLY COMPANY, *Appellant*, v. F. H. HAWTHORNE *et al.*, *Respondents*.[1]

[1]Reported in 150 P. (2d) 55.

*Evans, McLaren & Lane,* for appellant.

*Lynwood Fix,* for respondents.

BEALS, J.—During the summer of 1942, Farwest Fisheries, Inc., was operating, using, as its plant, property at Anacortes which it was purchasing under an executory contract of sale. In the fall of that year, Martinsen Shipyards, Inc., a corporation of which Martin H. Martinsen was president, acquired the vendee's interest in the property, and converted the premises into a shipbuilding plant for the building of wooden boats or barges, for the construction of which the Martinsen company held a contract from the Federal government.

That company (to which we shall refer as Martinsen) proceeded to remodel the plant, purchasing the required electrical equipment and materials from Westinghouse Electric Supply Company, a corporation, the material being ordered either by Mr. Martinsen or the electrician. Considerable material was ordered during the month of December, 1942, though a portion was not delivered until the following January, after Mr. Martinsen had ceased to be president of the corporation. Material delivered in December was not paid for, and, after its delivery, Martinsen was adjudged a bankrupt, the defendants in this

action, F. H. Hawthorne *et al.*, acquiring the bankrupt's interest in the plant, both real estate and personalty.

Thereafter, plaintiff, Westinghouse Electric Supply Company, filed its lien against the property for the value of the unpaid-for material, and instituted this action to foreclose the same, filing the usual complaint of foreclosure. Defendants answered, denying the material allegations of the complaint and asking that the action be dismissed. The action was tried to the court, and resulted in a decree of dismissal with prejudice, from which plaintiff has appealed.

Error is assigned upon the entry of the decree dismissing the action, and upon the refusal of the trial court to enter a decree establishing appellant's right to a lien and foreclosing the same.

Respondents do not contend that the material was not furnished by appellant, as claimed; that the price charged therefor was unreasonable; that the balance for which appellant sued was not in fact due or that the lien was not seasonably filed; or that the action to foreclose the same was not timely instituted. Respondents' contention before the superior court was that the materials furnished were and remained personal property, and afforded no basis for the foreclosure of a materialman's lien against real estate.

The material furnished by appellant consisted of electric wiring of various lengths and types, wire holders, ells, conduits, switches, push buttons, linestarters and heaters, entrance caps, gaskets and covers, copperweld ground-rods, carriage bolts, pulleys, together with motors and sliding rails.

Appellant claims this lien pursuant to Rem. Rev. Stat., § 1129 [P. C. § 9705], which provides, *inter alia,*

"Every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any . . . building . . . machinery . . . or any other structure . . . has a lien upon the same for the labor performed or material furnished by each, respectively, whether performed or furnished at the instance

of the owner of the property subject to the lien or his agent."

Section 1130 renders the land upon which the improvement is made subject to the lien granted by the preceding section.

The plant is housed in a building of open construction about four hundred feet in length and two hundred fifty feet in breadth. Respondents argue that the materials furnished were not used in the "construction, alteration or repair" of the building, and that the articles never became fixtures so as to render the property lienable under the statute.

While the materials were not used in the construction or repair of the building, they were undoubtedly used in the course of its alteration in connection with the changes required to turn the plant into one for the construction of boats or barges. Appellant, therefore, may establish its lien if it can be held that the items for which the lien is sought became fixtures.

The burden rests upon appellant to establish its right to a lien. In this connection, plaintiff cites Rem. Rev. Stat., § 1147 [P. C. § 9723], which reads as follows:

"The provisions of law relating to liens created by this chapter, and all proceedings thereunder, shall be liberally construed with a view to effect their objects."

This section should not be considered in determining the question of whether or not a particular claim of lien is enforcible as such.

In the case of *DeGooyer v. Northwest Trust & State Bank*, 130 Wash. 652, 228 Pac. 835, we said:

"Statutes creating liens are in derogation of the common law and are to receive a strict construction. *Tsutakawa v. Kumamoto*, 53 Wash. 231, 101 Pac. 869, 102 Pac. 766. Their operation will not be extended for the benefit of those who do not clearly come within the terms of the act. It is true that § 1209, Rem. Comp. Stat. [P. C. § 9665b], provides that the lien laws shall be liberally construed with the view to effecting their object. This means that when it has been determined that persons come within the operation of the act it will be liberally applied to them."

The general rule is stated in 40 C. J., title "Mechanics' Liens," p. 455, § 641, as follows:

"Claimant in a proceeding to enforce a mechanic's lien has the same burden of proving his cause of action as rests upon complainant in other civil actions, and where the allegations of his pleadings are properly in issue, the burden of proof is on him to establish his right to a lien, and to show that he has complied with all of the essential requirements of the statute under which he claims."

■■ In order to render real property subject to foreclosure for a materialman's lien, it must appear that the articles alleged to be lienable have become fixtures.

"The determination of the question whether the article furnished has so become a part of the realty as to be a fixture is considered conclusive of the right to a lien on the realty for furnishing the material, and this may be accepted as the general rule, except that even though the article may have become a part of the realty, there is no right to a lien if the transaction was a mere sale of personal property as such and without any regard to its contemplated particular use." 36 Am. Jur., title "Mechanics' Liens," p. 64, § 78.

Another of the general rules to be followed in determining whether or not materials have become attached to real estate as fixtures, is stated in the latter half of the foregoing citation:

"A further distinction is also made, in that the right to a mechanic's lien as to materials annexed to realty is to be governed by the rules of the law of fixtures applicable as between vendor and vendee and between mortgagor and mortgagee of realty, and probably by the rules applicable between heir and executor, but not, it seems, by the rules for determining what are fixtures between landlord and tenant."

■ In the early case of *Filley v. Christopher,* 39 Wash. 22, 80 Pac. 834, 109 Am. St. 853, this court, in an action of replevin, laid down the following principles to be considered in determining whether or not certain articles had become fixtures:

"The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty,

or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold."

█ Considering the question of the intention of the party making the annexation, this court, in the case of *Washington Nat. Bank v. Smith,* 15 Wash. 160, 45 Pac. 736, said:

"That the intention with which machinery is placed upon the real estate is one of the elements to be taken into consideration in determining whether or not it remains a chattel or becomes a part of such real estate is conceded, but it does not follow that such intention can be shown by testimony as to the actual state of the mind of the person who attached the machinery to the real estate at the time it was attached. On the contrary his intention must be gathered from circumstances surrounding the transaction and from what was said and done at the time, and cannot be affected by his state of mind retained as a secret."

Upon this same subject, in the later case of *Ballard v. Alaska Theatre Co.,* 93 Wash. 655, 161 Pac. 478, this court said:

"The intent is not to be gathered from testimony of the actual state of mind of the party making the annexation . . . but is to be inferred, when not determined by an express agreement, from the nature of the article affixed, the relation and situation to the freehold of the party making the annexation, the manner of the annexation, and the purpose for which it is made."

In the case at bar, the appliances were ordered by a conditional vendee, the predecessor in interest of respondents, whose intention to enrich the freehold may be assumed, other requirements being proven. *Hall v. Dare,* 142 Wash. 222, 252 Pac. 926, 50 A. L. R. 635; *Nearhoff v. Rucker,* 156 Wash. 621, 287 Pac. 658.

Considerable evidence was introduced concerning the various items which appellant had furnished. The evidence, however, is not always clear, and as to some of the items it is impossible for one not accustomed to deal in or

use the same to understand the exact nature of the use of the article or its attachment to the building or machinery located therein. In its prayer, appellant asks both for special and general relief, and, if any of the items placed by respondent in the building are lienable, appellant is entitled to have a lien therefor established and foreclosed.

■   Appellant furnished a large quantity of wiring and material essential to the placing, maintenance, and use thereof. This wire, whether unprotected or in conduits or otherwise covered, was attached to the building, and was, of course, in the open, the building being of single construction. Manifestly, wiring for electrical power and light is an essential part of a plant such as is here in question. The wiring must be attached in some way to the building, hence to the realty, and the fact that the building may be of single construction is immaterial. A portion of the wire furnished was stored for future use as needed, but this does not prevent appellant from claiming a lien therefor. Materials which are delivered in good faith by a materialman, to be incorporated into a building, are lienable, and the fact that they have not been used for the purpose for which ordered will not defeat the claim.

In the case of *Holly-Mason Hardware Co. v. National Surety Co.*, 107 Wash. 74, 180 Pac. 901, the court said:

"The bondsman manifestly did not become surety for all the materials the contractor might purchase during the time he is actually at work upon the contract, regardless of the use made of the materials. But, since he may not be able to show that the materials furnished actually went into the structure, he is allowed the more liberal rule of showing that he delivered the material on the ground for use therein."

The later case of *Thompson v. O'Leary*, 176 Wash. 606, 30 P. (2d) 661, is to the same effect.

The evidence supports appellant's claim of lien for the wiring, accessories, and appliances used in connection therewith.

■   Appellant claimed a lien for some articles which it

appears were used in the boats or barges which Martinsen manufactured. Appellant may not maintain a lien upon the building for material which was used in the construction of the boats.

■ The other materials which appellant furnished consisted of electric motors of various descriptions, push buttons for remote control of the power to be used in operating the motors, linestarters to be used in connection with the motors, pulleys for use in connection with the plant machinery, a switch for use in connection with a hoist situated on the dock, and some sliding rails for use in connection with the motors, the exact nature of which is not explained by the evidence.

The burden rested upon appellant to prove that the material on which he claimed a lien became a part of the real estate. Doubtful questions must be resolved in favor of respondents.

It clearly appears that the electric motors for use in connection with the operation of the plant machinery constituted a considerable portion of the amount claimed by appellant. Mr. Martinsen testified, "The motors were to operate the machinery there." Mr. McBratney, an employee of appellant, testified, "All the things are in plain sight, that is, the motors, you can see them on the lathes and the saws." Mr. Carr, Martinsen's electrician, referring to the motors, stated:

"They was used around there on saws and lathes, and around. . . . Q. Were these motors built especially for this place, or were they ordinary stock motors? A. They were ordinary stock motors. . . . Q. Were these particular motors what we call portable motors? A. Those are portable tools, portable electric tools."

Linestarters and heaters were used on the motors intended to operate the bandsaws. The motors were bolted to the floor with lag screws to hold them stationary while in use, but were moved from place to place as convenient. Mr. Carr testified:

"We move them around to where it is the most logical place, to where most of the men are working there. If

there is a big crew working in the far end, we move it down there."

As to the push buttons furnished, Mr. Carr testified:

"Q. Refer to the next item dated January 9, 1943, 5 push buttons, total $9.27. A. That is for remote control on the saws and planers—machinery in general. Q. Were any of those used in the boats? A. No. Q. This particular five, this particular group, January 9th, are you looking at the same item I am? A. Could I ask a question of one of the Westinghouse men in regard to this number on the push buttons? We have two types, the ones that went on the boats is a single push button. I am not familiar with the numbers. Q. Without being specific on your memory, they either went in the boats or were used on the planes or saws? A. Yes. Q. Some push buttons of that same type, at least, were used on the boats that were built there? A. Yes, we used twenty; I can't designate the numbers of them."

As this is the only testimony concerning the use of these push buttons, it must be held that the evidence did not show that they were fixtures.

The pulleys furnished were made of pressed paper, and used to operate the saws or to "hook the motor up with the saw."

Appellant furnished a 60 A Nofuse double throw 250 voltage switch, which was used in connection with the hoist, and attached to the same platform on the dock to which the hoist itself was attached. The evidence concerning this particular item tells nothing further about its use or the manner in which it was attached to the platform referred to. It is impossible to tell whether the platform was fixed or movable, and the manner in which the switch was attached thereto.

Concerning certain automatic switches used to control the motors driving the machinery, Mr. Carr testified:

"Q. There was a certain quantity of switch boxes? A. Each one [motor] required an automatic switch, also what we call a break-down switch in front of the automatic switch. Q. And those switches are attached to the building, are they? A. Yes, they are to a portion of the building, what-

ever is handy to the saw. Sometimes we build a platform to mount them on so they are convenient for operation that is close to the piece of machinery that it is going to operate on. Q. What I want to find out is whether or not they were attached to the building in a solid manner—the switches? . . . A. If there is a post there handy we attach them to that, but if there wasn't one and we wanted a planer free from any portion we simply built a stanchion there, a 2 x 4, something that will carry it, and mount the switch and starting device on that, and then conduit from that to the motor. We try to keep it as close as possible; the motors, switches, etc. are all considered a unit. . . . Q. How were the switches attached to the boards or the posts or the stanchion that you built? A. We just screw them on there."

From the testimony it cannot be ascertained whether or not these switches were permanently attached to and part of the structure, or merely set up temporarily at different locations under such circumstances as not to constitute them a part of the structure.

Several of the motors furnished were equipped with sliding rails. The evidence does not show how these rails were used or installed. Upon the record, it cannot be held that they ever became fixtures.

The language used by this court in the case of *Zimmermann v. Bosse*, 60 Wash. 556, 111 Pac. 796, is here pertinent:

"Learned counsel for the plaintiff contend that the trial court erroneously decreed certain machinery to be personal property and not subject to the lien of the mortgage. This machinery consisted of a portable fire box boiler, engines, lathes, shafting, pulleys, belts, pipes, saws, carriages, conveyors, pumps, edgers, planers, exhaust fans, boring machines, emery wheels, dry-kiln apparatus, and other machines, tools and appliances. Nearly all of these things were in various ways attached to the floors, ceilings or posts of the buildings; but none were so attached but that they could be removed and taken from the buildings without injury to the buildings. It seems to us quite clear from the evidence that none of these machines and appliances were specially made for these buildings or for this plant. They were all known as standard or stock goods, and sold as such by catalogue and price lists by the manufacturers, and were suitable for use in any plant of this nature. . . . Under prior decisions of this court, we think it follows that these

machines and appliances are not fixtures, but personal property, and hence not subject to the mortgage."

The case cited has been quoted with approval in the following cases: *Nearhoff v. Rucker,* 156 Wash. 621, 287 Pac. 658; *Provident Mut. Life Ins. Co. v. Smith,* 175 Wash. 356, 27 P. (2d) 580.

In the *Zimmermann* case it was held that engines, lathes, saws, edgers, planers, etc., were not fixtures, but remained personalty. In the case at bar, there is no evidence that the motors used in operating the machines were intended to be or had become fixtures.

Respondent argues that, when a claimant includes in his lien nonlienable property, the entire lien must fail, citing *Robinson v. Brooks,* 31 Wash. 60, 71 Pac. 721. In the case cited the court said:

"Appellants never supposed, and do not now claim, that these items were lienable or inserted by mistake or inadvertence. They were wilfully inserted in the notice of lien, and a claim made therefor. It is manifest from the record that the lien claimants inflated their real claim for $85.50 to $205.50, and sought to foreclose the same for the full amount, besides $100 attorney's fees. The evidences of bad faith are so clear that the whole claim should fail."

In the case at bar, there is no evidence whatever of bad faith on the part of appellant. Its claim was not "inflated." It is true that appellant was in error as to the extent of its lien, but we are convinced that the lien was filed and foreclosure thereof sought in good faith. The case relied upon by respondents is not here controlling.

Upon the record we hold that the trial court erred in denying appellant foreclosure of its lien in the amount claimed for the electric wiring, conduits, and appliances used in attaching the same to the building. The trial court correctly denied appellant any relief as to the other items for which it claimed a lien.

The decree appealed from is reversed and the cause remanded to the superior court, with instructions to proceed in accordance with the views herein expressed.

SIMPSON, C. J., STEINERT, JEFFERS, and GRADY, JJ., concur.