[No. 43466.   En Banc.   July 24, 1975.]

THE DEPARTMENT OF REVENUE, *Respondent*, v. THE BOEING COMPANY, *Appellant*.

*Perkins, Coie, Stone, Olsen & Williams, Graham H. Fernald*, and *Pamela G. Bradburn*, for appellant.

*Slade Gorton, Attorney General, Timothy R. Malone, Senior Assistant*, and *Richard D. Hicks, Assistant*, for respondent.

FINLEY, J.—The Boeing Company appeals a decision of the Superior Court for Thurston County which held that certain equipment in the Boeing 747 assembly plant at Everett, Washington, does not qualify for manufacturing tax credits that are available under RCW 82.04.435 for fixtures that substantially add to the productive capacity of the plant. The decision of the Superior Court had reversed an administrative ruling in favor of the Boeing Company rendered by the Board of Tax Appeals. We affirm the Superior Court.

Most, but not all, of the facts are undisputed. The facts not in dispute are as follows: Boeing maintains and operates an assembly plant in Everett, Washington, which was designed and built primarily for purposes of manufacturing and assembling the Boeing 747. It is anticipated by Boeing that this will be the primary purpose of the plant for the next 20 years or longer.

In the assembly of the Boeing 747, immense[1] tools termed "fixed assembly jigs" are used to hold various large sections of the aircraft steady and in alignment. The function and purpose of the jigs is thus similar to, but far more complicated than that of a vise on a workbench. The jigs are specially designed to hold the major component parts of the Boeing 747 and cannot be used in the assembly of any other airplane.

The jigs are not built into the floor of the plant. Rather, most of the jigs are bolted to the floor and/or to concrete foundations rising from the floor. Other jigs, however, are apparently secured by their massive weight alone. More-

---

[1]The precise weight of the jigs is in dispute. The Board of Tax Appeals found that the jigs varied in weight from 70 to 120 tons. The Superior Court found this clearly erroneous and concluded that the jigs varied in weight from 20 to 103 tons. In reviewing the agency determination, we of course stand in the same position as did the Superior Court. *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n*, 83 Wn.2d 446, 518 P.2d 1237 (1974). The record makes it apparent that the Superior Court was correct and that the finding of the Board of Tax Appeals was clearly erroneous as to the weight of the jigs. However, we do not consider the weight of the jigs to be crucial to the result reached herein.

over, it is possible to disassemble the jigs and remove them from the plant without injuring the building itself and Boeing has moved similar, although smaller, jigs from plant to plant in previous aircraft assembly projects.

Boeing lists and reports these jigs as personalty to Snohomish County for property tax purposes and Boeing's work manual refers to the jigs as "tools." Boeing depreciates the main building at 40 years; it depreciates the building equipment at 25 years; and it depreciates the "tools"—including the jigs—at 12 years.

The jigs themselves do not provide working access to the parts of the aircraft being assembled. Therefore, the jigs are surrounded by large platforms, called "floor mounted equipment" which provides such access to the aircraft sections at appropriate levels. These platforms contain walkways, stairways, built-in utility services, storage space, offices, et cetera. The Department of Revenue considered the "floor mounted equipment" to be fixtures and Boeing was allowed a tax credit with respect to it.

The potential future use of the plant building apparently is in dispute. The Board of Tax Appeals entered a finding which could be read to imply that the building can be used only in conjunction with the jigs here in question. We agree with the Superior Court that this is clearly erroneous and that the record establishes that the building could be used for purposes other than the manufacture of Boeing 747's.

All parties agree that the pertinent statute is the 1967 version of RCW 82.04.435. That statute allowed, as a credit against manufacturing business and occupation taxes, the amount of sales and use taxes paid:

> on materials, labor and services in the construction or major improvement of buildings, structures or other improvements to real property that are essential to or an integral part of a factory, mill or manufacturing plant
>
> . . .
>
> The term "major improvement" means and includes only construction or *fixtures which constitute real prop-*

*erty* which adds substantially and directly to the size or productive capacity of the factory, mill or manufacturing plant.

(Italics ours.) Laws of 1967, 1st Ex. Sess., ch. 89, § 1.

The parties are also in agreement that the jigs meet all other requirements for tax credits under this statute if they are fixtures. Therefore, the sole issue for our consideration is whether the Boeing "fixed assembly jigs" constitute fixtures.

■ In resolving this issue, it must first be observed that the tax credit statute on its face evinces no intent to import into the term "fixtures" a more encompassing meaning than the term carried at common law. On the contrary, this statute neither defines "fixtures" nor qualifies the term in any manner which might indicate that it should have a legal meaning independent to that which it has under common-law principles. As such, it is apparent that this case must be governed and decided by reference to common-law principles.

■ However, there is some question as to the appropriate scope of review of the decision of the Board of Tax Appeals which applied common-law principles relating to the law of fixtures. Review of the decision of the Board is governed by RCW 34.04.130 (6) [2] which provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> . . .
>
> (d) affected by other error of law; or
> (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; . . .

Boeing contends that review of the Board's decision is gov-

---

[2]The taxpayer may opt for either a formal or informal hearing before the Board of Tax Appeals. Boeing requested and received a formal hearing before the Board. In such circumstances, review of the Board's decision is to be held pursuant to RCW 34.04.130 and .140. *See* RCW 82.03.180.

erned by subsection (e) and, therefore, deference should be given to the policy of the tax credit statute which apparently was to encourage spending for improvements and to thereby stimulate employment. Implicit within this reasoning is the contention that, for purposes of the tax credit statute, the term "fixtures" should be given a more encompassing meaning than might otherwise be warranted under strict common-law principles.

We cannot agree with Boeing's analysis. As noted earlier, the face of the tax credit statute indicates that the definition of the term "fixtures" is to be governed solely by common-law principles. And the determination of what is a fixture is a mixed question of law and fact. *Nearhoff v. Rucker,* 156 Wash. 621, 287 P. 658 (1930); *Philadelphia Mtge. & Trust Co. v. Miller,* 20 Wash. 607, 56 P. 382 (1899); 1 G. Thompson, *Real Property* § 55 (1964). When an agency allegedly makes an error of law or, as here, an error involving a mixed question of law and fact, its decision is properly reviewable pursuant to subsection (d) of RCW 34.04.130 (6), *supra.* In such a case, the policy of the statute in question is not controlling and cannot be invoked to alter established legal principles, particularly when the statute on its face *retains* such principles. As such, our review of this case is directed at whether the Board of Tax Appeals made an error of law in its determination that the "fixed assembly jigs" qualified as fixtures.

■ Our starting point is the oft-repeated common-law principle, most recently reiterated in *Lipsett Steel Prods. v. King County,* 67 Wn.2d 650, 652, 409 P.2d 475 (1965), that:

> "The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold."

This test, originally imported into the law in Washington in *Chase v. Tacoma Box Co.,* 11 Wash. 377, 39 P. 639 (1895),

and followed by most American courts, had its genesis in *Teaff v. Hewitt*, 1 Ohio St. 511 (1853), which is generally considered to be the leading case on the law of fixtures. *See generally* 5 *American Law of Property* § 19.3 (1952).

Each prong of this test must be established before an article may properly be deemed to be a fixture.[3] We agree with the Department of Revenue that the third prong, *i.e.*, the intent of Boeing to make a permanent annexation to the freehold is lacking in the instant case.

▇ Evidence of intent, of course, must be gathered from all the surrounding circumstances *at the time of installation of the jigs*, and is not to be gathered from the testimony of the annexor as to his actual state of mind. *Ballard v. Alaska Theatre Co.*, 93 Wash. 655, 161 P. 478 (1916); *Westinghouse Elec. Supply Co. v. Hawthorne*, 21 Wn.2d 74, 150 P.2d 55 (1944). Moreover, all pertinent factors reasonably bearing on the intent of the annexor should be considered in assessing the intent at the time of annexation including, but not being limited to, the nature of the article affixed, the relation and situation to the freehold of the annexor, the manner of annexation, and the purpose for which the annexation is made. *Strain v. Green*, 25 Wn.2d 692, 172 P.2d 216 (1946); *Ballard v. Alaska, supra*.

Essentially two factors support the position of Boeing.

---

[3]The Department of Revenue has conceded in effect that there has been either an actual or constructive annexation of the jigs in question. But it denies that the annexation was a permanent one. The Department also contends that only annexations which are appropriated to, integrated with, and of permanent benefit *to the land regardless of its future use*, *i.e.*, water systems, drainage and sewer systems, heating furnaces, et cetera, can qualify as fixtures. The Department urges that annexations of "special purpose" which can be used only in conjunction with a particular business or industry and not in any normal use to which the land might be devoted cannot qualify as fixtures. *See Zangerle v. Standard Oil Co.*, 144 Ohio St. 506, 60 N.E.2d 52 (1945). *Cf. Cherry v. Arthur*, 5 Wash. 787, 32 P. 744 (1893); *Chase v. Tacoma Box Co.*, 11 Wash. 377, 39 P. 639 (1895); *Welsh v. McDonald*, 64 Wash. 108, 116 P. 589 (1911). Not all jurisdictions, however, adopt such an approach. 5 R. Powell, *The Law of Real Property* § 660 (1974). In view of the disposition made herein, we need not pass upon this argument made by the Department.

First, since Boeing is the owner of the freehold, it arguably could be presumed that the intent of the annexation was to benefit the freehold and not to preserve the jigs as personalty. *See Ballard v. Alaska Theatre Co., supra.* Second, the jigs in question are concededly necessary to the production of the Boeing 747 and the record does not disclose any plans by Boeing to end the production of such aircraft.

However, counterbalanced against these two considerations are several other factors, the cumulative effect of which convinces us that the annexation was not intended to be a permanent benefit to the freehold.

First, the supposed permanency of the jigs is totally dependent upon Boeing's continued use of the building to manufacture the Boeing 747 in its present form without substantial structural design changes. According to the record, it would not be feasible to modify the jigs so that they could be used in the production of other aircraft. But the plant itself could certainly be used to manufacture either larger or smaller aircraft, in which case the present jigs would have to be discarded and new ones brought into the plant.

Second, the manner in which the jigs are secured to the floor of the plant is indicative of an intent that they be easily removable upon any changes in the current program. For instance, the concrete floor was not poured so that the jigs would be sunken into it and thereby become part of the building. Rather, the jigs are simply bolted down in such a fashion that they can be easily removed without any harm to the building itself.

Third, the jigs themselves were designed in such a manner that they can be disassembled and moved in or out of manufacturing plants without undue difficulty or harm to the jigs. Indeed, similar albeit smaller jigs have been moved from plant to plant in past aircraft construction programs. It is difficult to ascribe an intent to Boeing that the jigs be a permanent part of the realty when they can be so readily moved out of the plant and thus transformed back into personalty.

Fourth, Boeing itself has considered the jigs to be personalty and has reported them as such for property tax purposes. Boeing contends that this was done merely as a matter of convenience to assure the assessor that the jigs would be taxed somewhere and it notes that the tax rates for realty and personalty are identical. It is stipulated that this listing was made by Boeing with the "approval" of the assessor and pursuant to WAC 458-12-010(3)(c) which provides in pertinent part:

> Whenever the taxable property status of engines, machinery, equipment and fixtures is questioned by the assessor, the taxpayer may be required to list such items in the manner provided by RCW Chapter 84.40 and WAC 458-12-080 [*i.e.*, as personalty].

However, there is nothing in the *record* to indicate that the tax status of the jigs has ever been questioned by the assessor and that Boeing was required to list the equipment as personalty. The decision to list the jigs as personalty appears to have been a unilateral one on Boeing's part and is an indication that Boeing considered the jigs to be personalty. We do not find persuasive Boeing's contention that the jigs were listed as personalty merely to assure the assessor that the jigs would be taxed somewhere.

Finally, Boeing's own code chart manual categorizes the equipment and distinguishes between fixtures and other "tools." The jigs are not listed along with the other equipment that Boeing considers to be fixtures. Instead, the jigs are referred to as "tools." While Boeing's categorization of its equipment certainly is not conclusive as to what is and is not a fixture, the reference to the jigs as "tools" and not as fixtures is hardly indicative of an intent for the jigs to be a permanent part of the realty. If Boeing had intended for the jigs to be a permanent accession to the freehold, it seems more likely that they would have been listed with the rest of the fixtures.

In sum, we do not think that the totality of the circumstances can reasonably be construed to indicate an intent by Boeing for the jigs to be a permanent accession to the

freehold. For the foregoing reasons, the judgment of the Superior Court should be affirmed. It is so ordered.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.